## IN THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA,

AT THE JUNE TERM THEREOF, HELD AT WHEELING, IN THE COUNTY OF OHIO, COMMENCING ON THE FOURTH DAY OF JUNE, 1873, AND END-ING ON THE TWENTY-SECOND DAY OF JULY, 1873.*

---

## WHEELING.

### CARSKADON *v.* WILLIAMS.

#### July 19, 1873.

1. A declaration in an action of trespass, for assault and battery, and false imprisonment, which alleges the cause of complaint sufficiently to make known to the defendant what he is to answer to, so that judgment, according to law and the very right of the case, could be given, is sufficient, in substance, and a demurrer thereto should be overruled.

2. Belligerent rights having been conceded by the National Government to the Confederates, in the late Civil War, it is the duty of the Judiciary of this State to recognize the same principle, in actions against belligerents for acts done in conformity with military authority and under a military order.

3. In such actions the plea of belligerent rights is admissible.

*Other cases decided at the June Term may be found reported in Vol 6, W. Va. Reports.

4. Pleas of belligerent rights must allege, specifically, all matters necessary to show that the defendant acted in conformity with military authority and under a military order.

5. Where a plea, intended to be a special plea of belligerent rights, does not allege that the defendant committed the act complained of, but does allege that others committed the act, it simply amounts to the plea of "not guilty," and the general issue having been pleaded, it is proper to reject the intended special plea.

6. Declarations of one or more conspirators, cannot be proven to affect his or their fellow, until the fact of conspiracy between the parties has been first shown.

7. When the declarations of co-conspirators have been proven, by a witness not connected with the conspiracy, he may be cross-examined by defendant, as to defendant's statements during the transaction, as part of res gestœ.

8. In an action for false imprisonment, evidence as to the kind, quality and quantity of food, is not admissible, unless the fact is specifically alleged in the declaration.

This was an appeal from a judgment of the circuit court of Preston county, rendered on the 18th day of June, 1868. The Hon. John A. Dille, then judge of said circuit court, presided on the trial of the cause.

On the 25th day of July, 1864, the defendant in error, Isaac H. Carskadon, sued out of the clerk's office of the circuit court of Preston county, a summons against the plaintiff in error, Strother M. Williams, commanding him to appear and answer the plaintiff, in an action for trespass, assault and battery, and false imprisonment, "for that the said defendant, on or about the 23d day of November, 1861, with force and arms, &c., assaulted the said plaintiff, to-wit: at his house, in the county of Hampshire, West Virginia, and within the jurisdiction of this court, and then and there seized and laid hold of the said plaintiff, and with great force and violence, pulled and dragged about the said plaintiff, and then and there gave and struck the said plaintiff a great many violent blows and strokes; and also then and there forced and compelled the said plaintiff to go from and out of his home, situate and being in the said

county of Hampshire, West Virginia, and within the ju-
risdiction of this court, and then forced and compelled
him to go in and along with the said defendant to the
town of Staunton, in the county of Augusta, in the State
of Virginia, and then and there imprisoned the said
plaintiff, and kept and detained him in prison there,
without any reasonable or probable cause whatsoever, for
a long space of time, to-wit : for the space of —— days,
then next following, contrary to the law and practice of
this State, and against the will of the said plaintiff,
whereby the said plaintiff was then and there greatly
hurt, bruised and wounded, and was also thereby and
there greatly exposed and injured in his business and
circumstances, to-wit : at his home in the county of
Hampshire aforesaid. And also for that the said defend-
ant, on or about the 23d day of November, 1861, with
force and arms, &c., again assaulted the said plaintiff, to-
wit : at his home in the county of Hampshire, and with-
in the jurisdiction of this court, and then and there beat,
bruised and ill treated him, and then and there impris-
oned him, and kept and detained him in prison, without
any reasonable or probable cause whatsoever, for a long
time, to-wit : for the space of —— days, then next follow-
ing, contrary to the laws and customs and against the peace
of the Commonwealth, and against the will of the said
plaintiff. And also for that the said defendant, on the
day and year aforesaid, with force and arms, &c., again
assaulted the said plaintiff, to-wit: at his home, in the
county of Hampshire, Virginia, and within the jurisdic-
tion of this court, and then and there beat and ill treated
him, and other wrongs to the plaintiff then and there
did, against the peace of the commonwealth, and to the
damage of the said plaintiff of $3,000."

The cause was matured at rules, came upon the docket
of said circuit court, and was continued until the June
term, 1865, when the defendant appeared and demurred
to the plaintiff's declaration and each count thereof,
which demurrer, the court, upon argument, overruled ;

1873.
June Term.

Carskadon
v.
Williams.

and thereupon the defendant pleaded not guilty, and is-- sue was joined thereon.

At the September term, 1865, the defendant again appeared and filed what is termed in the record a special plea, alleging, *first,* "that before, and at the time when, &c., in the said declaration mentioned, a civil war existed and was being carried on between the government of the United States of America, and a government styling itself the Confederate States of America, and that at the time when, &c., in said declaration mentioned, the said plaintiff was a citizen of, and residing within the territory occupied by the said United States of America, and an enemy of the said Confederate States of America;" and, *second,* "that at the time aforesaid, the said defendant was in the service and army of the Confederate States of America, then so engaged in the said civil war, as aforesaid, and acting at that time under the command of Lieutenant Henry, an officer in the said army of the Confederate States of America, and being so in the army and service, as aforesaid, the said Confederate soldiers under the command of said Lieutenant Henry, did, at the time when, &c., in said declaration mentioned, from within the territory occupied by the said United States of America, take and carry away, as a prisoner, the said plaintiff, so being a citizen of the United States, as aforesaid, and an enemy of the said Confederate States of America, by the order and command of said Lieutenant Henry, so being such officer, in the Confederate army, as lawfully they might do for the cause aforesaid." The plaintiff replied, specially : "that at the time of the seizure of his person, by the said defendant, he, the said plaintiff, was a peaceable citizen of the United States, and not armed, or in the service of the United States, and as such owed allegiance to the government of the United States, and resided in West Virginia, and within the military lines of the United States, and while owing such allegiance to the government of the United States, and a non-combatant residing as aforesaid, the

1873.
June Term.

Carskadon
v.
Williams.

.said defendant did seize and carry away the person of the said plaintiff, &c., and this the said plaintiff prays may be inquired of by the country, &c."

The defendant demurred to the said special replication, and the plaintiff joined therein, and the same being argued, "it was insisted, by the plaintiff, that, on the principle of going up to the first fault, the said special plea should be overruled:" Whereupon the court quashed the said plea, as not sufficient in law to preclude the plaintiff from maintaining his action against the defendant, and continued the cause at the defendant's costs.

On the twenty-second day of September, 1865, the defendant filed what is termed in the record, a *second* special plea, alleging, "that at the time when, &c., in said plaintiff's declaration mentioned, a civil war existed and was being carried on by and between the government of the United States of America, and a government styling itself the Confederate State of America, and that at the time when, &c., in said declaration mentioned, the said plaintiff was a citizen of, and residing within the territory occupied by the United States of America, and an enemy of the said Confederate States of America; and said defendant further saith that at the time when, &c., in said declaration mentioned, he, the said defendant, was in the service and army of the said Confederate States of America, then so engaged in civil war as aforesaid, acting at the time under the command of Lieutenant Henry, an officer in the said army of the Confederate States of America, with other Confederate soldiers, and being so in the army and service of the said Confederate States of America, the said Confederate soldiers, under the command of said Lieutenant Henry did, at the time when, &c., in said declaration mentioned, from within the territory occupied by the said United States, and by the direction and orders of the said Lieutenant Henry, seize, take and carry away, as a prisoner, the said plaintiff, so being an enemy of the Confederate States of America, and said defendant avers that at the time when

said plaintiff was so seized and taken prisoner as aforesaid, the said Lieutenant Henry commanding the said soldiers of the Confederate States of America, had good reason to mistrust the said plaintiff, and to believe that he would give information to the forces of the United States of America prejudicial to the cause of the said Confederate States, and would give them aid and comfort without this that said defendant used any more force than was necessary to capture and secure the said plaintiff as a prisoner; and so the said defendant says that for the cause aforesaid, they might lawfully seize, take, and carry away the said plaintiff, as a prisoner, as aforesaid, and that they are the same supposed trespassers in the plaintiff's declaration set forth."

The plaintiff filed a special replication to this second special plea averring that as "to the matters alleged in the *second* special plea of the defendant, the plaintiff ought not to be barred, &c., because he says that the defendant, at the time when he entered the Confederate service, and at the time of committing the assault, battery and imprisonment at, &c., was a citizen of the United States, residing and properly within the lines and territory of the United States, and so being a citizen and resident aforesaid, voluntarily deserted from the United States and joined the Confederate forces, and committed the said assault, battery and imprisonment in his own wrong." The defendant demurred to this replication and there was a joinder therein. The record states that the demurrer was lost, or mislaid.

On the twenty-first day of April, 1866, leave having been obtained therefor, the defendant filed *two* special pleas.

The *first* avers "that before and at time when, &c., in the said declaration mentioned, a civil war existed and was being carried on between the Government of the United States of America and a government styling itself the Government of the Confederate States of America; that before the time when, &c., the Govern-

ment of the United States by the President's proclama-
tions of the nineteenth and twenty-seventh of April,
1861, and the act of Congress of the thirteenth of July,
1861, recognized that the said war then being carried on
between the said Government of the United States and
the government styling itself the Confederate States of
America, was a civil war; that before and at the time
when, &c., the State of Virginia had, by an ordinance
of a convention of said State on the seventeenth day of
April, 1861, cast off its allegiance to the United States
and declared its independence thereof, and with other
citizens of the United States of America, had organized
armies and commenced hostilities against the United
States, and occupied and held a portion of the territory
of the United States, including a portion of the then
State of Virginia, in armed hostility to the United
States; that at the time when, &c., the county of Hardy,
in the State of Virginia, was so held by the State of
Virginia, in hostility to the United States, and by the
armies of the said Government of the Confederate
States; that at the time when, &c., the said defendant
was a resident of said county of Hardy, in the State of
Virginia, and a citizen of said State, within the territory
of the United States, thus held in a hostile manner to
the said Government of the United States, and subject
to the power and control of the said government styling
itself the Confederate States of America, and to the
power and control of the said Government of Virginia,
in armed hostility to the said Government of the United
States, and that he, the said defendant was then and
there subject to the power and control of the said Gov-
ernment of the Confederate States, and of the Govern-
ment of the State of Virginia, then and there engaged in
armed hostility to the said Government of the United
States, and that the said defendant before the said time
when, and after the said war was recognized as a civil
war by the President and the Congress of the United
States as aforesaid, on the —— day of ———, 1861, had

been duly enrolled as one of the militia of the said State of Virginia, in the fourteenth regiment of the militia of said State, in the county of Hardy, before the formation of the State of West Virginia, in which county of Hardy, the said State of Virginia in armed hostility to the United States exercised its power, authority, and control, and required obedience to its laws, and constituted authorities, and over which the restored Government of Virginia exercised no power or control, its territory being held and occupied by the armies of said Confederate States, and of the State of Virginia, in opposition and hostility to the said Government of the United States, and to the said restored Government of Virginia, and at the time when, &c., the said defendant being so enrolled in the said fourteenth regiment of the militia of Virginia, the said regiment, by the order of John Letcher, Governor of the State of Virginia, and commander-in-chief of the militia of said State, was called into active service in the then existing civil war, and he, the said defendant, as one of the members of said regiment, was required to engage in said civil war as a soldier of said regiment, under the command of Wm. H. Harness, the colonel thereof, and said regiment and defendant as a member thereof, was made subject to the orders of the said Confederate Government, and of the officers in the army thereof. And said defendant avers that at the time when, &c., the said plaintiff resided in the county of Hampshire, in the State of Virginia, and within the territory then held and occupied by the armies of the United States, and within the control and power of the United States, and within that portion of the State of Virginia, over which the reorganized Government of Virginia exercised control ; that said plaintiff recognized the reorganized Government of Virginia, as the true and lawful Government of Virginia ; that his fidelity was due to said reorganized government ; that he claimed to be a citizen of, and to owe allegiance to, the Government of the United States, and was, and claimed

1873.
June Term.

Carskadon
v.
Williams.

to be, an enemy of the said Confederate States, and of the State of Virginia, and her citizens, which were in armed hostility to the United States, and the reorganized Government of Virginia, and that at the said time when, &c., a portion of the army of the said Confederate States, under the immediate command of Lieutenant Henry, of the Charlotte cavalry, made an incursion into the said county of Hampshire, and within the territory then held and occupied by the United States, by its armed forces, with which command the said defendant was required and commanded by the said Lieutenant Henry, an officer of the said Confederate States army, to join himself as one of the militia of the said fourteenth regiment of Virginia militia, then in the actual service of the Confederate States, and to act in concert therewith, which command said defendant could not resist, and that at the time when, &c., the said Lieutenant Henry, so being an officer in the army of the said Confederate States, and in command of the said Charlotte cavalry to which said defendant was then and there attached as a soldier in the Confederate army, and of which command he formed a part, ordered and commanded the said defendant, and other members of said Charlotte cavalry, to arrest, seize, take, and imprison the said plaintiff as an enemy of the Confederate States and of the State of Virginia then engaged in civil war with, and against, the United States, and said defendant avers that the said Charlotte cavalry to which he was then and there attached at the said time when, &c., under and by virtue of the authority of said orders and command of the said Lieutenant Henry, arrested, seized, took, and imprisoned and carried away the said plaintiff as in his said declaration set forth, as lawfully they might do, which is the same supposed trespass in the said plaintiff's declaration mentioned; without this that he committed any other further trespass."

The *second* avers "that before and at the time when, &c., a civil war existed and was being carried on between the United States and a government styling itself

the Confederate States of America, which civil war was before the time when, &c., recognized by the United States by the President's proclamations of April 19th and 27th, 1861, and by the act of Congress of July 13th, 1861; that at the time when, &c., the plaintiff was a citizen of the United States residing in the county of Hampshire, in the State of Virginia, and claimed to owe allegiance to the United States, and recognized the restored Government of Virginia as the only true and rightful Government of the State of Virginia, and was an enemy of the said Confederate States of America; that said plaintiff was within the territory held and occupied in the State of Virginia by the armies of the said United States in opposition to the armies of the said Confederate States of America, the territorial boundaries of the two hostile parties being marked and defined by lines of bayonets; that said defendant was, at the time when, &c., a resident of the county of Hardy, in the State of Virginia; that said county was then held and occupied by the armies of the Confederate States, and was controlled by the Government of Virginia, hostile to the United States; that the restored Government of Virginia did not then and there exercise control and authority in said county; that he, the said defendant, was then and there subject to the control and authority of the said Confederate Government and the Government of Virginia, in armed hostility to the United States; that he was, before said war and at the time of said alleged trespass, enrolled as one of the militia of said county; was, after the commencement thereof, called into active service against the United States, by the hostile Government of Virginia, and could not resist that call, and was under and subject to the orders of the officers of the Confederate States army.

And said defendant further avers that at the time when, &c., a portion of the army of the Confederate States under the command of Lieutenant Henry, an officer of the Confederate States army, made an incur-

sion into the said county of Hampshire and within the territory then held and occupied by the armies of the United States, with which command the said defendant was then and there required and commanded by said Lieutenant Henry to unite himself, and which he could not resist, and that at the time when, &c., the said Lieutenant Henry, so being the officer in command of that portion of the army of the Confederate States to which said defendant was then attached, and of which he formed a part, ordered and commanded the said defendant, and other members of his said command, to arrest, seize, imprison, take and carry away the said plaintiff, then and there being an enemy of the said Confederate States, and within the territory held and occupied by the said United States. And said defendant avers that the said plaintiff was then and there arrested, seized, taken, &c., under and by virtue of said order, command and authority of said Lieutenant Henry, an officer of the Confederate States of America, then commanding said expedition, as in the plaintiff's declaration set forth, by the members of said command, as lawfully they might do, and said defendant avers that the said arrest and capture was a legitimate act of war.

And said defendant further avers that subsequently, to-wit, on the —— day of May, 1865, and after the time when, &c., the President of the United States and commander-in-chief of its armies, issued his Proclamation of Amnesty in favor of persons engaged in said civil war against the United States, relieving them from all the consequences of their legitimate acts of war during the same, and that he, the said defendant, on the —— day of August, 1865, availed himself of the benefits of said Amnesty Proclamation, took the oath thereby prescribed, and he avers that the said alleged trespasses are thereby discharged, condoned and pardoned, and said defendant avers that he committed no further or other trespass against said plaintiff."

1873.
June Term.

Carskadon
v.
Williams.

On the thirty-first day of October, 1867, the cause having been continued from term to term, either generally or at the costs of the defendant, the plaintiff appeared and demurred to the two special pleas of the defendant, filed April 21, 1866, in which demurrer the defendant joined, and the court adjudged the said pleas insufficient in law and sustained the demurrer. At the same time the court proceeded to dispose of the defendant's demurrer to the plaintiffs special replication to the defendant's special plea, filed September 22, 1865, and, "upon the principle of going up to the first fault," the court considered that the said plea is not sufficient in law, and, thereupon that the same be quashed.

On the 12th day of June, 1868, the cause having been continued from term to term, either generally or at defendant's costs, a jury was sworn in the cause, and on the next day they rendered a verdict finding the defendant guilty, and assessing the plaintiff's damages at $1,340. The record does not show that the jury was sworn to try any issue, or to assess damages.

On the 18th day of June, 1868, the defendant moved to set aside the verdict of the jury and grant him a new trial, which motion the court overruled and rendered judgment on the verdict of the jury aforesaid, and for the amount of damages assessed by the jury, as aforesaid, with legal interest thereon from June 13, 1868, and the costs in said circuit court expended.

On the trial of the cause the defendant tendered *three* several bills of exception to certain opinions of the court given upon the trial. :

The *first* avers "that upon the trial of the issue in this cause the plaintiff, to support the issue on his part, without having offered any other evidence, introduced Abraham Ashby, a witness, and proposed to prove by him that in the latter part of November, 1861, and about 2 or 3 o'clock in the afternoon, he fell in with some eight or ten men about five miles from Moorfield, going in the direction of the residence of the plaintiff, among whom

was the defendant, who was armed with a revolver, and that the witness traveled with them about ten or twelve miles, and parted with them about that distance from the residence of the plaintiff, whom he left going in that direction, and that whilst the witness was so traveling along with such persons, one Charles Lobb, Joseph Vandever, and some other person of the party, but not the defendant, said they were going after the Carskadons, though at the time this was said the witness did not know where the defendant was, or whether he heard or could have heard what they said, but that he was somewhere along the road with some of the party. To the introduction and proof to the jury of the said statement of the —— Charles Lobb, Joseph Vandever, and another above mentioned, the defendant, by his counsel, objected, but his said objection was overruled, and after the said statement had been proved to the jury by the plaintiff, the defendant on cross-examination of the said witness, asked him to state whether the said defendant, at the time they were so traveling along the road, as aforesaid, with the said party, said anything about where he was going, or the purpose for which he was going ; if so, state what he said : to this question the plaintiff, by his counsel, objected, and his said objection was sustained by the court, and the witness was not permitted to answer the same ; to which said judgment of the court in overruling the objection of the defendant and permitting the witness to give the above statement of the said Charles Lobb, Joseph Vandever and another, to the jury, and that of sustaining the objection of the · plaintiff before mentioned, to the inquiry of the defendant as to what was said by him as aforesaid, the defendant, by his counsel, excepts."

The *second* avers "that upon the trial of the issue in this cause, the plaintiff, to support the same on his part, introduced John R. Carskadon, a witness, and asked him to state to the jury the kind and quality and quantity of food that was furnished to the plaintiff whilst he

was detained as prisoner in the town of Staunton, Virginia. To this question the defendant, by his counsel, objected, because the same was irrelevant, and because there was no averment in the declaration that improper, unwholesome or insufficient food was furnished the plaintiff, but the said objection was overruled, and the witness permitted to answer and make such statement, merely to show the character of the imprisonment, and who did state that the said plaintiff was furnished very poor food, and in quantity not more than half of what was sufficient; that among the food furnished, witness believed was horse meat. To the judgment of the court in overruling the said objection of the defendant, and permitting the said witness to answer and make such statement to the jury, the defendant, by his counsel, excepts."

The *third* avers that "be it remembered, that after the jury had rendered their verdict in this cause, the defendant moved the court to set aside the same and grant him a new trial, because the same was contrary to the evidence, and because the damages assessed by the said jury were excessive, which said motion the court overruled and entered judgment upon the said verdict. To the overruling of said motion and giving judgment on said verdict, the defendant, by his attorney, excepts, and prays that these his exceptions may be signed, sealed, and made a part of the record of this cause, which is done accordingly; and thereupon the court proceded, upon the motion of the said defendant, to certify the facts proven upon the trial, as follows, to-wit: That in the latter part of November, 1861, about eleven o'clock at night, a number of men came to the house of the plaintiff, then in the county of Hampshire, Virginia, and now in county of ———, in the State of West Virginia, and called the plaintiff to the door and arrested him and carried him to Moorefield, and from thence to Staunton, Augusta county, Virginia, and there imprisoned him in a jail and detained him there for about two weeks;

and after about five weeks from the time of his arrest released him; that the number of persons along with those who made the capture was about twenty; that on the day preceding the night of the capture or arrest of the plaintiff, the defendant was seen on the road leading from Moorefield to the house of the plaintiff in company with a party of eight or ten Confederate soldiers, all going the same direction from Moorefield towards the plaintiff's house aforesaid; that defendant was armed with a pistol, and pretty much as the others were armed, and that whilst the defendant was so on the said road going towards the plaintiff's house with the said soldiers, some of the said party (but not the defendant) said that they were going to capture the Carskadons; that the defendant at the time the plaintiff was captured was on horse-back in the road, near the house where the plaintiff was captured; that he had accompanied the party who captured the plaintiff from near Moorefield to the place of the capture, and some twelve or fourteen miles back on their return, at which last place the defendant left them; that the forces who made the capture were commanded by Lieutenant Henry, of the Charlotte cavalry, and was principally composed of said cavalry; that defendant did not belong to said cavalry, but did belong to the 14th regiment, Virginia militia, then in actual service; that the said party of men with whom the said defendant was so seen on the way from Moorefield, was a scouting party under command of a lieutenant whose object was to obtain information; that the defendant, for his personal safety, kept in company with said scouting party who were behind the Federal lines; that there was at the time a considerable force of Federal soldiers at Romney, a few miles from where the said capture was made; that the plaintiff was taken into custody by some of said company of Confederate soldiers, but not by the defendant; but it was proven by a witness, Bailey, who was captured at the same time, that he was captured by the defendant Williams, and a man by the name of Vandever,

1873.
June Term.

Carskadon
v.
Williams.

but it was also proven by Joseph V. Williams, one of the command, that Lieutenant Henry and Joseph. V. Williams captured the said Bailey, and that the defendant was not present, but was out in the road about two hundred yards off between the plaintiff's house and said Bailey's. That the order to capture the plaintiff was given about 200 or 300 yards from the house in which the plaintiff then was; that the night was rainy and dark at times, at other times it could be seen that there was a moon ; that at the same time the plaintiff was so captured, John R. Carskadon was also captured by the same men, or a portion of them ; that they were both carried off together with said Bailey ; that the said Carskadons were not personally acquainted with the defendant ; that they had never seen him to know him ; that about ten or twelve miles from where they were so captured, the guard of the said John R. was changed ; that from something said by said guard the said John R. was induced to think that the man who was then guarding him and who continued along with him for a distance of from three to six miles was the defendant; that whilst the said John R. was so riding along with the said guard, so supposed by him to be the defendant or some one in the neighborhood, he, the said John R. Carskadon, noticed particularly the face of his said guard, with a view to recognize him in the future ; that the said John R. did not see the person so guarding him again until the latter part of the summer, or early in the fall, of 1862 or 1863, when he casually met a man on the railroad track, at New Creek, walking, when and where it suddenly flashed across his, the said John R's mind, that it was the same person whose face and features he had so noticed as aforesaid, when guarding him as aforesaid, and who he then learned was the defendant Williams. The defendant proved by his own oath, &c., that he was not connected, in any way or manner, with the capture or carrying away or imprisonment of the said plaintiff or the said Bailey, and did not go with said company of Confed-

erate soldiers for this purpose, and was not while with them under its orders or command."

In view of the importance of the principles adjudicated in this case the reporter has deemed it proper to incorporate into the statement of the case the pleadings at length. He is not aware that the forms of pleadings in such cases are to be found in any work on pleading, or, indeed, in any treatise, or volume of reports.

*Caleb Boggess* for appellant.
*C. W. B. Allison* and *William G. Brown* for appellee.

MOORE, JUDGE:

This is an appeal taken by Strother M. Williams, from the rulings of the circuit court of Preston county, in an action of trespass on the case, instituted by Carskadon against him, for assault and battery, and false imprisonment.

The first question of error assigned is the overruling the demurrer to the declaration.

Technically, at common law, the declaration would not be strictly correct, but under the liberality of our statute, there is nothing omitted in the declaration " *so essential to the action* (or defence,) that judgment, according to law and the very right of the cause," could not be given. It is sufficient, in substance, to make fully known the cause of action which the defendant is to answer to, and to enable the court to give judgment *according to law and the very right of the cause.* The demurrer was properly overruled.

To the declaration, the defendant, in addition to the plea of the general issue, filed two special pleas in writing, to which the plaintiff filed a special replication, and upon demurrer to the replication, by the defendant, the court, acting upon the principle of going back to the first fault in pleading, as insisted on by the plaintiff in the argument of the demurrer, held the special pleas insufficient in law, and quashed them. The pleas, no

doubt, were intended to be, what have commonly been designated in our courts, pleas of belligerent rights. They are not sufficiently specific for that purpose, but are defective in allegations material to a plea of that kind. The pleas do not indicate that he acted in, or was connected with the matters complained of, but allege that others committed the trespass complained of, namely: "*The* said Confederate soldiers, under the command of said Lieutenant Henry, did, at the time when, &c., in said declaration mentioned, from within the territory occupied by the said United States of America, take and carry away, as a prisoner, the said plaintiff, &c." If the trespass was committed by other parties than the defendant, the fact could have been proven under the general issue—the plea of "*not guilty;*" and these two special pleas, framed as they are, amount to nothing more than general issue pleas; and as the proper form for the general issue to such complaint is "*not guilty,*" and that plea had already been put in, the court did not err in quashing them.

Afterwards, leave having been given, by consent, to the defendant, to file additional pleas, the defendant, on the twenty-first day of April, 1866, filed two pleas, in writing, which were demurred to by the plaintiff, and the court sustained the demurrer, and the pleas were rejected.

The pleas were in bar of the action, and commonly called pleas of belligerent rights. They are proper in form and substance, and were rejected no doubt, under the rulings of the Supreme Court of Appeals in this State, which has heretofore held that such pleas were not admissable in actions similar to this.

The concession of belligerent rights was made by the National Government, in all its departments, to those of the Confederate side, in the late civil war, and the recognition of that concession by the nations of the earth, together with acts of the Legislature and the provisions of the Constitution of this State to the same effect,

demand of the Judiciary of this State a similar recogni-

1873.
June Term.

Carskadon
v.
Williams.

tion. Those rights having been recognized and acted upon by the Federal authorities in their struggle against the Confederate powers, must be recognized and admitted by the Judiciary of this State now. If the defendant acted in conformity with military authority and in execution of a military order, the act must be considered a belligerent act, in the legal import of the term, and he is not liable to a civil action.

The pleas being proper in themselves, but having been rejected in consequence of the rulings of the Supreme Court, which were wrong in principle, and which misled the circuit court, the defendant should be permitted to file the pleas.

As to the sixth error assigned, viz: That " the court erred in swearing the jury ' *according to law*,' and not to try the issue.' "

The proper way is to swear the jury to try the issue joined, and the record should show it. But as the record in this case shows that the defendant was present at the time, it must be presumed that the jury were sworn to try the issue joined, as the defendant took no exception, then, to the mode of swearing, and the record says they were sworn according to law; the objection after verdict, comes too late.

The seventh assignment of error is to the rulings of the court as set out in the first bill of exceptions. The plaintiff introduced the witness Ashby and proposed to prove by him, that in the latter part of November, 1861, and about two or three o'clock in the afternoon, he fell in with some eight or ten men about fifteen miles from Moorefield, going in the direction of the residence of the plaintiff, among whom was the defendant, who was armed with a revolver, and that the witness traveled with them for about ten or twelve miles, and parted with them about that distance from the residence of the plaintiff, whom he left going in that direction, and that whilst the witness was so traveling along with such persons, one

The defendant objected to the introduction and proof to the jury of the said statements of Lobb, Vandever and another, but the court admitted the proof of the statements.

The admission of such evidence was not proper, because no foundation had been laid, by proof, to establish, *prima facie*, the fact of conspiracy, or combination between the parties. Nor does it appear that the evidence was admitted by the court, for the sake of convenience, upon the prosecutor undertaking to furnish such proof in a subsequent stage of the cause.

I think the admission of the evidence of those declarations was not in accordance with the rules established in such cases, and the court therefore erred. 1 Green. Ev. sec. 111.

Had it been proper to have admitted proof of those declarations, then the court would have erred in its refusal to admit the declarations of defendant, afterwards asked for on the cross-examination, because in such a state of the case his declarations would have been part of the *res gestæ*, and certainly necessary to his defence.

The court also erred in admitting proof of the kind and quality, &c., of the food furnished plaintiff while in prison; because there was no allegation in the declaration to give the defendant notice of such a special damage, and the law does not necessarily imply that the plaintiff sustained such damage from the acts as alleged in the declaration. In 1 Ch. Pl. 6 Am. ed. pp. 371, 440-444, it is said: "Thus in an action of trespass and false imprisonment, where the plaintiff offered to give in evidence, that during his imprisonment, he was stinted in his allowance

of food, he was not permitted to do so, because that fact was not, as it should have been, stated in his declaration;" and in a similar action, it was held " that the plaintiff could not give evidence of his health being injured unless specially stated." Mr. Greenleaf lays down the same doctrine in his Treatise on Evidence.

I am therefore of opinion that the judgment of the circuit court is erroneous, and should be reversed with costs, the cause remanded and a new trial awarded, the demurrer to the belligerent rights pleas overruled and the plaintiff required to reply to the said pleas, and the cause to proceed under the principles here adjudicated.

The other Judges concurred.

JUDGMENT REVERSED AND CAUSE REMANDED.

NOTE BY THE REPORTER.—At the same term the principles adjudicated in the foregoing decision were affirmed in the case of John R. Carskadon v. same defendant, on an appeal, by defendant, from the judgment of the circuit court of said Preston county.