## WHEELING.

### WHITE *v.* CRUMP AND SHANKLIN.

Submitted August 21, 1880, decided May 6, 1882.

1. Where a State Constitution divides the government into three distinct and separate departments, viz: The Legislative, the Executive, and the Judicial, without special authority in the Constitution for so doing it is beyond the power of the Legislature to authorize courts to set aside judgments and grant new trials in cases after the term, at which the judgments were recovered, has passed, for such action would be judicial. (p. 592.)

2. But the people of the State in their sovereign capacity have the right in adopting a Constitution for their government to do anything which they are not prohibited from doing by the Federal Constitution, which was made and ratified by the States themselves.  (p. 592.)

3. Before the ratification of the Fourteenth Amendment to the Constitution of the United States the Legislature might, if authorized by the State Constitution, devest vested rights of property, when such rights were not vested by contract.  (p. 592.)

4. Since the ratification of the Fourteenth Amendment to the Federal Constitution vested rights of property can only be devested by a State by "due process of law."  (p. 592.)

5. A judgment founded on a tort is in no sense a contract; therefore section 35 of Article VIII of our Constitution, as it only applies to judgments founded on tort, is not inhibited by section 10 of Article I. of the Constitution of the United States, as it does not impair the obligation of a contract.  (p. 592.

6. A supersedeas-bond executed under the requirement of the law for the purpose of indemnifying the plaintiff, while the judgment is being reviewed, has no effect apart from the judgment itself; and for its binding force it depends upon the fate of the judgment.  If the judgment is void, the supersedeas-bond is necessarily void also, and such a bond, where the judgment is void, is not affected by section 10 of Article I of the Constitution of the United States.  (p. 593.)

7. Section 35 of Article VIII of the Constitution of West Virginia, which declares, that " no citizen of West Virginia, who participated in the war between the Government of the United States and a part of the people thereof on either side, shall be held liable civilly or criminally; nor shall his property be seized or sold on final process issued on judgments heretofore recovered or otherwise because of an act done according to the usages of civilized warfare in the prosecution of said war by either of the parties thereto," operates *ex proprio vigore*.  (p. 595.)

8. A special plea, to an action of debt on a supersedeas-bond, that the original judgment, which on writ of error had been affirmed by the Supreme Court of Appeals of the State, " was recovered because of an act done by a citizen of this State according to the usages of civilized warfare in the prosecution of the late war between the Government of the United States and a part of the people thereof," presents a complete defence to the action.  (p. 595.)

9. Section 35 of Article VIII of the Constitution of the State treats judgments as property and provides for the carrying out of the provision by "due process of law;" and such judgments, as were contemplated by said section, were not to be declared void, until "by due process of law it was ascertained, that they were recovered "because of acts done according to the usages of civilized warfare in the prosecution of the war," and when so ascertained, they were to be treated as nullities.  (p. 595.)

10. "Due process of law as used in said section means, in the due course of legal proceedings, according to the rules and forms, which have been

established for the protection of private rights, securing to every person a judicial trial before he can be deprived of his property. (p. 595.)

11. A trial in a action on an supersedeas-bond upon issues joined upon special pleas, which set up the defence, that the original judgment was "recovered because of an act done by a citizen of this State according to the usages of civilized warfare, &c.," and which issues were found for the defendants, and judgment for the defendants on the only ground, that the original judgment was void, and in effect deprived the plaintiff of the benefit of his judgment, was "due process of law." (p. 595.)

12. If in time of war an act is done in good faith with a view to assist the side, in whose service the actor was engaged, and was such an act, as would be recognized by civilized nations as according to the usages of civilized warfare, although done without special orders, the actor could not be held liable therefor. (p. 596.)

13. An instruction in the language of the pleadings although general is not erroneous; therefore it was not error to instruct the jury: "If they believed the act done by the defendants was according to the usages of civilized warfare, they must find for the defendants." If the plaintiff had desired, he had the right to have the court define to the jury the meaning of the phrase, "usages of civilized warfare." (p. 597.)

14. In time of war an officer has the right to arrest and imprison any one, whom he suspects and has reason from general representation or otherwise to suspect of giving aid and comfort to the enemy or of intending to give such aid and comfort; and such arrest and imprisonment is "according to the usages of civilized warfare." (p. 599.)

Writ of error and supersedeas to a judgment of the circuit court of the county of Summers rendered on the 25th day of September, 1879, in an action in said court then pending, wherein Andrew White was plaintiff, and William B. Crump and Louis A. Shanklin were defendants, allowed upon the petition of said White.

Hon. Homer A. Holt, judge of the eighth judicial circuit, rendered the judgment complained of.

JOHNSON, PRESIDENT, furnishes the following statement of the case:

The plaintiff, White, instituted his action in debt upon a supersedeas-bond in the circuit court of Summers county on the 22d day of January, 1877, against the defendants Crump and Shanklin. His declaration alleged, that the said defendants on the 28th day of January, 1868, together with one William H. French, who was then living, executed a bond in the penalty of four thousand dollars, payable to the

79

plaintiff, to which bond was the following condition: "The condition of the above obligation is such, that whereas the said Andrew White, at the October term, 1867, of the circuit court of Mercer county, in the State of West Virginia, obtained a judgment against the above bound William H. French in an action of trepass then pending in said court for the sum of two thousand dollars with legal interest thereon from the —— day of October, 1867, until paid and ——— dollars costs. And whereas a *supersedeas* to said judgment has been awarded by the Supreme Court of Appeals for the State of West Virginia upon the application of said William H. French. Now if the said William H. French shall satisfy said judgment, if the same shall be affirmed by said Supreme Court of Appeals, or said *supersedeas* be dismissed, and shall also pay all damages, costs and fees, which may be incurred by or awarded against him in the prosecution of said *supersedeas*, then the above obligation to be void, otherwise to remain in full force and virtue."

The declaration alleges, that the said Supreme Court of Appeals on the 15th day of March, 1870, affirmed said judgment and awarded damages and costs, which have not been paid either by the said William H. French in his lifetime or by the said defendants, his sureties, since his death, but though often requested they have refused to pay the same, and still refuse, to the plaintiffs damage $4,000, &c. The defendants pleaded "conditions performed" and tendered three special pleas, in writing, to which the plaintiff objected, but the objection was overruled and the pleas filed. At a subsequent day, to-wit: on the 17th day of April, 1879, the plaintiff by his attorney moved to reject the said three special pleas, which motion the court overruled, and the plaintiff replied generally to each of said pleas. The case was then tried by a jury, and a verdict was rendered for the defendants. The plaintiff moved the court to set aside this verdict and to grant him a new trial, which motion the court overruled and entered judgment upon the verdict. The plaintiff during the trial saved three good bills of exceptions, which were duly signed by the court. The first bill of exceptions was to the judgment of the court in admitting certain testimony; the *second* to the refusal of the court to give an instruction asked by the plaintiff, and the

modification of another instruction asked by the plaintiff; the
*third*, to the refusal of the court to set aside the verdict and
grant a new trial.

To the judgment rendered upon the verdict of the jury, the
plaintiff obtained from this court a writ of error.

*David E. Johnston* for plaintiff in error cited the following
authorities: Gilm. 838; Cool. Const. Lim. 47–49, 407, 408;
*Id.* 61; Big. Estopp. 75, 81; 13 Gratt. 152; 27 Gratt. 624; 19
Gratt. 14; 22 Gratt. 378; 26 Gratt. 765; 29 Gratt. 494; 10
Pet. 449; 6 Wall. 268.; 10 Wall. 308; Broome Leg. Max. 33;
Sedg. Stat. & Const. Law 313; 7 Johns. 477; 11 Mass. 396; 45
Me. 507; 2 Greenl. 275; 17 B, Mon. 176.; 12 Wheat 349; 3
Wheat. 28; 11 Wheat. 420; 8 Mass. 423; 13 Pick. 532; 7
Ind. 470; 7 Blackf. 154; *Id.* 623; 8 Blackf. 56, 58, 116, 160,
177, 455; 1 Ind. 24; 2 Ind. 65; 5 Ind. 348; 8 Ind. 533; 26
Cal. 46; 3 Vt. 507; 2 Aik. 284; 15 Ohio St. 207; 13 Wis. 37.;
19 Wis. 17; 1 Dan. Chy. Pr. 77; 1 Aik. 314; 5 Tex. 433; Dan.
Ind. Dig. 215, § 89; 41 Mo. 63; 40 Ala. 547; 41 Ala. 153; 24
Ark. 91; 1 N. H. 199; 10 N. Y. 396; 43 Ala. 173; *Id.* 224; 3
Mich. 436; 2 Gill 79; 4 Cal. 127; 9 Wis. 559; 13 Wis. 37.;
19 Wis. 17; 7 Tex. 348; 4 Wheat. 122; 12 Wheat. 349; 7
Humph. 130; 2 Ala. 397; 1 McLean 136; 3 Den. 247; 30
Ala. 547; 18 How. 331; 1 Kent Com. 454, note 4; 3 Greenl.
326; 6 Ind. 501; 13 La. Ann. 175; Cool. Const. Lim. 94–96;
*Id.* 335; 5 W. Va. 446; 18 How. 421; 12 N. Y. 209, 6 Cald.
233; 13 N. Y. 378; 11 Mich. 113; 3 N. Y. 511; 43 Ala. 224.;
1 Blackst. Book 2 s. pp. 438, 439; Free. Judgmts. § 217; 6
Gratt. 154; 2 Kent Com. (11th ed.) 432, 487; 50 Me. 111; 12
N. Y. 209; 4 Dev. 15; 16 Pa. St. 266; 1 Mich. 56; 10 Cal.
305; 4 Barb. 64; 12 Coke 1; 1 Atk. 182; 1 P. Wms. 267; 6
How. 301; Pott. Dwarr. 479; 10 N. Y. 396; 39 Pa. St. 146.;
3 Me. 355; 7 W. Va. 1.

*A. C. Snyder* for defendant in error cited the following au-
thorities: 4 W. Va. 170; Const. Art. VIII. § 35; Acts 1872–
3 pp. 14, 15, 16; 8 W. Va. 612; 4 Munf. 1; 14 Ga. 438; 11
Cal. 175; Const. U. S. Art. I. § 10; 3 Dall. 386; 4 Wall. 277;
11 Pet. 420; *Id.* 572; 1 Burr. Law Dict. "Contract;" 3 Burr.
1545; Mason 288; 17 Ill. 572; 5 McLean 172; 12 Wheat.
316; Va. Law Jour. (March, 1877) pp. 168 and 178; 2 Jones,

303; 7 Cranch 288; Code ch. 139 § 11; 11 How. 185; 18 How. 272; 92 U. S. 90; 30 Conn. 450; *McMillen* v. *Anderson* 4 Otto ; 10 Gratt. 405 ; 7 Pet. 469 ; *Id.* 222; 16 Pet. 25 ; 2 Pet. 627; 51 Cal. 243 ; 3 Dall. 394 ; 17 B. Mon. 177 ; 4 Mich. 244; 11 La. Ann. 303; 2 Pet. 412 ; 11 Pet. 420; 10 Pet. 294 ; 2 Paine 74; 8 Pet. 110; 20 Gratt 31 ; 3 A. K. Marsh. 423; 8 Pet. 88 ; 10 How. 395; 13 B. Mon. 1 ; 3 Metc. (Ky.) 255; 5 Tex. 34; 8 Pa. St. 177 ; 10 Serg. & R. 97; 56 Pa St. 57 ; 25 Gratt. 1; 4 W. Va. 138; 9 W. Va. 616 ; 28 Conn. 97 ; 36 Me. 9 ; 3 H. & J. (Md.) 43 ; 10 Md. 495 ; 40 Ga. 493; *Id.* 698 ; Vatt. Law of Nations 223 ; 7 How. 1 ; 3 W. Va. 645; 7 W. Va. 1; 4 Wall. 333; 11 Wall. 259; 23 Wall. 296; 93 U. S. 284 ; *Id.* 274 ; 23 Gratt. 409 ; Va. Law. Jour. (June, 1877) p. 363 ; 16 Ohio 599; 52 Pa. St. 480 ; 3 Dutch. 197; 16 Mass. 245; Story Const. § 1958; 28 Miss. 813; 1 Rand. 46; 1 Cranch 309; 9 Pet. 329; *Id.* 357; 13 Pet. 45 ; 4 Cal. 23; 15 Gratt. 122; 10 W. Va. 115; 12 W. Va. 516.

Johnson, President, announced the opinion of the Court:

The first plea filed by the defendants against the objection of the plaintiff is in substance as follows: that prior to the execution of the bond in the declaration mentioned the plaintiff, White, had in 1866 instituted a suit against one William H. French in the circuit court of Mercer county, in trespass ; and in his declaration alleged that on or about the —— day of —— 1862, the defendant, French, arrested, carried away and imprisoned the plaintiff and did procure, order and instigate others so to do, wrongfully, forcibly and against the plaintiff's will, whereby the plaintiff was taken from his family, deprived of his liberty and incarcerated in loathsome dungeons, and other wrongs to the plaintiff then and there did and procured others to do, against the peace, and to the damage of the plaintiff $50,000.00, &c.; that afterwards, to wit, on the —— day of —— 1866, the said French filed in addition to his plea of not guilty, two special pleas in writing known as pleas of "belligerent rights," which were rejected by the court ; that after said pleas had been rejected, the defendant tendered another special plea in writing of a similar character, in which it was averred by said defendant in substance and effect, that the said defendant and the plaintiff

were each citizens of the county of Mercer and the Common-
wealth of Virginia, and owed allegiance to said Common-
wealth; that before and at the time of the supposed grievance
in the said declaration complained of, the said Commonwealth
was engaged in actual war against those supposed by the then
authorities of said Commonwealth to be her enemies; that there
were then large numbers of soldiers in actual service in said
war; that the said Commonwealth and those in confederacy
with her were not only belligerents, but recognized as such
by the government of the United States; that during the
time said war was actually waging, the said defendant was
appointed and commissioned a captain of cavalry and assigned
to duty in the eighth regiment of Virginia volunteer cavalry as
such captain, and while the defendant's command was station-
ed in the said county of Mercer, within the limits of the terri-
tory of the Confederate States, without any special order by
said defendant, the plaintiff was arrested, by some of the sol-
diers connected with the said defendant's command and brought
to defendant's camp on a charge of disloyalty to the then au-
thorities in fact governing the said Commonwealth; and the said
defendant acting in obedience to orders and regulations then
in force and under the authority aforesaid caused the plaintiff
to be sent to the said defendant's commanding officer. And
all the supposed grievances, whereof the plaintiff has com-
plained, against said defendant were caused, ordered, and
done, while the said defendant was captain under his appoint-
ment aforesaid in the territory, which was then in fact
the territory of the said Commonwealth of Virginia and with-
in the territory of the Confederate States, and in possession of
the authorities, which then governed said Commonwealth, and
in accordance, with the laws, rules and regulations, which
then prevailed therein; that to the filing of said last mention-
ed plea the plaintiff objected and the court sustained the ob-
jection and rejected said plea; that afterwards, to wit, on the
4th day of October, 1867, the said action was tried by a jury
upon issues made upon the plea of not guilty and statute of
limitations, which jury rendered a verdict against the said
defendant for $2,000.00 damages and the court entered judg-
ment upon said verdict against the defendant for the said
damages with interest and costs, all of which more fully

and at large appears from the records of the said circuit court of Mercer county in the said court remaining; that from said judgment the said defendant applied to the Judges of the Supreme Court of Appeals of the State for a writ of error and *supersedeas,* which were allowed upon condition, that said defendant would file with the clerk of the said circuit court of Mercer county bond with good security in the penalty of $4,000.00, conditioned according to law in such cases; that in pursuance of said condition and requirement these defendants at the request of said French and as his sureties signed the bond sued on in this action.

These defendants aver, that said bond was executed for no other purpose or consideration than to secure the payment of the judgment and damages recovered in the action of trespass aforesaid and the costs therein in the Appellate Court, in the event said judgment should be affirmed by said Court of Appeals, or said supersedeas should be dismissed ; that said judgment, and damages were recovered by the plaintiff against said defendant, French, for acts done by him in accordance with the usages of civilized warfare in the prosecution of the late war between the government of the United States, and a part of the people thereof, and which acts were done in manner and form, and in pursuance of authority, as hereinafter recited and set forth.    And this they are ready to verify, wherefore they pray &c."

The third plea in substance is after setting forth the recovery of the judgment in trespass and the execution of the supersedeas-bond that before said action of trespass was instituted, to wit, on the —— day of ——— 1862, the plaintiff and defendant in the action were citizens and residents of the said county of Mercer, and both owed allegiance to the Commonwealth of Virginia and to the Confederate States, of which said Commonwealth and county were then a part ; that in the years 1862, 1863 and 1864, a war was waging between the government of the United States and a part of the people thereof, which latter were known as the Confederate States; that in the year 1862 the said French was a captain of cavalry, duly commissioned and acting as such, under the authority of the said Commonwealth of Virginia and the government of said Confederate States; that he had been prior to the month

of June 1862 as such captain assigned to duty in the 8th regiment of Virginia Volunteer Cavalry, and while said French's command was stationed in said Mercer county where said plaintiff then resided, and within the territory of the said Confederates States, the plaintiff without any special order from said French was arrested by some of the soldiers connected with said French's command and brought to the camp of said French upon a complaint of disloyalty to the government of said Confederate States; and the said French as such officer then in actual service acting in obedience to orders and regulations then in force under the authorities aforesaid caused said plaintiff to be sent to said French's commanding officer, then stationed at Rocky Gap, in the territory of the said Commonwealth of Virginia; that for the act aforesaid, in causing the plaintiff to be taken from his camp to the camp of his commanding officer in manner and form and by virtue of his office and authority aforesaid, the plaintiff afterwards instituted the action of trespass hereinbefore mentioned against French, and recovered the judgment for $2,000.00 and costs as hereinbefore stated; that said judgment was recovered for no other cause or condition than the act aforesaid done in manner and form and under the authority aforesaid. "And so these defendants say, that the bond sued on in this action by the plaintiff grew directly out of and is solely based upon an act done by W. H. French, the principal obligor therein, during the late war according to the usages of civilized warfare, and that these defendants as the sureties of said French in said bond cannot under the Constitution and laws of this State, be held liable for said act, or the bond sued on, which is the direct result of said act. And this they are ready to verify wherefore they pray &c."

The fourth plea is substantially the same as the third, except that it avers, that the war was waging "between the government of the United States and a part of the people thereof, known as the Confederate States."

Do these pleas set up a defence to the action? It is insisted by counsel for plaintiff in error, that chapter 58 of the Acts of 1872-3 does not provide for such a defence in such a case. This is true; but the constitutional provision contained in section 35 of article 8 does authorize such a defence, if it

operates *ex propria vigore*.   That it does so operate we have
no doubt.   *Johnson* v. *Parkersburg*, 16 W. Va. 402 ; *Mason*
v. *Harper's Ferry Bridge Co.*, 17 W. Va. 396 ; *Peerce* v. *Kitz-
miller supra*.   The mandate is clear and explicit, that " no
man's property shall be seized or sold under final process is-
sued on judgments or decrees heretofore rendered or other-
wise  because of any act done according to the usages of civ-
ilized  warfare in the prosecution of the war."   These pleas
show, that the judgment sought to be enforced in this case by
a suit upon the supersedeas-bond was recovered "because of
an act done according to the usages of civilized warfare in
the prosecution of the said war."   Such judgments unexe-
cuted at the time, when our Constitution was adopted, could
not thereafter be enforced, when by " due process of law" it
was ascertained, they were recovered because of acts done ac-
cording to the usages of civilized warfare.   In the case of
*Peerce* v. *Kitzmiller supra*, we held, that but for said provision
in our Constitution there could be no relief against such
judgments ; that under a Constitution which divides the gov-
ernment into three distinct departments, viz : the legislative,
the executive and the judicial, without special authority in
the Constitution for so doing it is  beyond the power of the
Legislature to authorize courts to set aside judgments and
grant new trials in cases, after the term, at which the judg-
ments were rendered had passed ; for such action would be
judicial.   But that the people of the State in their sovereign
capacity have the right, in adopting a Constitution for their
government to do anything, which they are not prohibited
from doing by the Federal Constitution, which was made and
ratified by the States themselves ; that before the ratification
of the Fourteenth Amendment to the Constitution of the
United States the Legislature might, if authorized by the
State Constitution, devest vested rights of property, where
such rights were not vested by contract ; that since the ratifi-
cation of said amendment such vested rights of property can
only be devested by a State by "due process of law ;" that a
judgment founded on a tort is in no sense a contract ; there-
fore section 35 of article 8 of the Constitution, as it only ap-
plies to judgments founded on tort, is not inhibited by section
10 of article 1 of the Constitution of the United  States, as it
does not impair the obligation of a contract.

But it is insisted, that the supersedeas-bond signed by the defendants in this action, and on which the suit is brought, is a contract, and its obligation cannot by the State be impaired. Proceedings on appeal-bonds, forthcoming-bonds, injunction-bonds and other bonds executed in a case, before the original judgments are executed, are in law considered as appendages to the original judgment and proceedings. *Edwards* v. *Green,* 1 Rand. 44 ; *Stuart* v. *Laird,* 1 Cranch 299. The reversal of the original judgment reverses or annuls the judgment on the delivery-bond, and the *supersedeas* to the fomer also supersedes the latter. *Bell* v. *Bogg,* 4 Munf. 260. In *Barton* v. *Petit and Bayard,* 7 Cranch 288, it was held, that if the original judgment be reversed, the reversal of the dependent judgment on the forthcoming bond follows of course.

In *Beers et als* v. *Haughton,* 9 Pet. Mr. Justice Story in delivering the opinion of the court at page 358 said : " Where the party is by the practice of the court entitled to an exoneretur without a positive surrender of the prisoner, according to the terms of the recognizance he is *a fortiori* entitled to insist on it by way of defence, where he is entitled *ex debito justitii* to surrender the principal. Now the doctrine is clearly established, that where the principal would be entitled to an immediate and unconditional discharge, if he had been surrendered, then the bail are entitled to relief by entering an *exoneretur* without any surrender. * * * * And *a fortiori* this doctrine must apply, where the law prohibits the party from being imprisoned at all, or where by the practical operation of law a surrender is prevented, so that there can be no doubt, that the present plea is a good bar to the suit, notwithstanding there has been no surrender, if by law the principal could not upon such surrender have been imprisoned at all. This constitutes the turning point of the case, and to the consideration of it we shall now proceed. In the first place there is no doubt, that the Legislature of Ohio possessed full constitutional authority to pass laws, whereby insolvent debtors should be released or protected from arrest or imprisonment of their persons on any action for any debt or demand due by them. The right to imprison constitutes no part of the contract ; and a discharge of the person of the party from imprisonment does not impair the

obligation of the contract but leaves it in full force against his property and effects."

In *Smith* v. *Brown*, 28 Miss. 810, it was held, that a delivery-bond could not be regarded as the contract contemplated by the statute.  It is mere process provided by the statute as a means of having execution of the judgment and at the same time of giving indulgence to the defendant; and as such it was under the power of the court and liable to be quashed as process of the court."

The supersedeas-bond certainly has none of the elements of such a contract as was contemplated by section 10 of article I of the Constitution of the United States.  *Peerce* v. *Kitzmiller, supra.*  It is simply an obligation imposed by the law; it has no independent force apart from the judgment; it is a collateral security for the payment of the judgment, if it is valid and binding, and has no more of the elements of a contract in it than the judgment itself; it is not a mutual agreement, nor is it voluntary on the part of those who sign it; it is executed under a sort of legal duress.  The party is compelled under the requirements of the law to execute it or deny himself his legal right to have the judgment, of which he complains, reviewed.  No man would execute such a bond, if he could have the judgment reviewed without it.  The judgment is the compensation, which the law gives for the trespass, and the supersedeas-bond is the indemnity to the plaintiff in the judgment, which the law requires on the enforcement of the judgment being arrested, while it is being reviewed in the Appellate Court.  It is a part of the proceedings in the case.  Its effect is dependent upon the fate of the judgment, without which it has no obligatory force.  It has no separate existence; for whenever the judgment ceases to be binding, the bond becomes inoperative for any purpose.  But for the adoption of section 35 of article VIII of our Constitution, the judgment having been affirmed by the Appellate Court, there could be no such defence to the action in the bond as is here set up.  We have held in *Peerce* v. *Kitzmiller, supra,* that said provision does not impair the obligation of a contract, because a judgment founded on a tort is not a contract; and we now in this case further hold, that a supersedeas-bond executed under the requirement of the law for the purpose of indemnifying the

plaintiff, while the judgment is being reviewed, has no effect apart from the judgment itself; and for its binding force it depends upon the fate of the judgment; that if the judgment is void, the supersedeas-bond must necessarily be void also; and that such a bond, when the judgment is found to be void, is not a contract protected by section 10 of article I of the Constitution of the United States. The constitutional provision operating *ex proprio vigore*, it follows, that if the judgment recovered by *White* v. *French,* to which the supersedeas-bond sued on in this case is a mere appendage, was recoverd "because of an act done according to the usages of civilized warfare in the prosecution of the war," said judgment being yet unexecuted, if it is ascertained "by due process of law," that it was recovered because of an act done as aforesaid, it is a void judgment, nothwithstanding it was affirmed by the Supreme Court of Appeals of this State, it being so affirmed before the present Constitution was adopted; and if the said judgment is void, the bond sued on in this case is also necessarily void; and the said special pleas setting up the fact, that the said judgment was recovered "because of an act done according to the usages of civilized warfare in the prosecution of the war," they present a perfect defence to the action, and were properly filed.

Section 35 of Article VIII of the Constitution, treats judgments as property, and provides for the carrying out of the provision by "due process of law;" and such judgments, as are contemplated by said section, were not to be declared void, until by "due process of law" it was ascertained, that they were recovered because of acts done according to the usages of civilized warfare in the prosecution of the war by either of the parties thereto as used in said section; and when so ascertained they were to be treated as nullities. "Due process of law" means in the due course of legal proceedings according to the rules and forms, which have been established for the protection of private rights, securing to every person a judicial trial, before he can be deprived of his property. *Peerce* v. *Kitzmiller, supra.* The said section cannot therefore violate the first section of the Fourteenth Amendment to the Constitution, of the United States, as it expressly provides, that it shall be made effectual by "due process of law." It

certainly cannot be said, that the trial of the case at bar upon the issues made up on the special pleas was not "due process of law." If the truth of the pleas was established, then the judgment for the defendants was clearly right.

Plaintiff's first bill of exceptions was to the admission of testimony. It shows, that "defendants asked James F. Patton (who was a lieutenant in the Confederate army and was engaged in the same military department with Captain Wm. H. French) the following question : "What principle did the army act upon in regard to the arrest of disloyal persons or Union men found within the Confederate military lines ?" to which question the plaintiff objected, but the Court overruled said objection, and the plaintiff excepted ; the witness then answered, that it was customary to send such persons under guard to the provost marshal," to which the plaintiff excepted. This bill of exceptions is not insisted on in the argument ; and we can not see, how the answer of the witness could have prejudiced the plaintiff.

The second bill of exceptions was to the refusal of the court to give plaintiff's instruction No. 1, and modifying his instruction No. 2. Instruction No. 1, which was refused, is as follows : " If the jury believe from the evidence in this cause, that the plaintiff was arrested by the order of the said Captain W. H. French and incarcerated in jail and imprisoned by reason of said arrest, and that said French gave such order and caused said arrest, without any order or authority from a superior officer or authority, then the plaintiff is entitled to recover, and they should find for him." That is to say, that no officer in the army could arrest even a spy, who had learned all he could and was making his way to his own camp again, unless that officer had particular orders to make such arrest. According to this position the three brave patriots, who were privates in the Continental army, were guilty of a trespass when they laid violent hands on a British officer, and searched and imprisoned him. It is absurd to say, that if the act itself was in good faith, with a view to assist the side, in whose service he was, and was such as would be recognized by civilized nations as according to the usages of civilized warfare, if done by a private soldier, it would make him liable in a suit for such act, even though he was not com-

manded by his superior officer to do the act. There is nothing decided in *Carskadon* v. *Williams*, 7 W. Va. 1, that is opposed to the position here taken. It was there held, that belligerent rights having been conceded by the government of the United States, to the Confederates in the late civil war, it is the duty of the judiciary of this State to recognize the same principle in actions against belligerents for acts done in conformity with military authority, and under a military order. But it is not said, if there was no military order for doing the act, if done according to the usages of civilized warfare, the party would be held liable. The instruction was properly refused.

The second instruction, which was modified by the court, is as follows : " The court instructs the jury, that mere proof of general reputation of the disloyalty of the plaintiff, is not sufficient justification for the defendants, unless accompanied by proof of an arrest on a charge of disloyalty" in manner and form as alleged in the plea of the defendants. This instruction the Court gave, but added to it : "if the jury believe from the evidence, that the arrest and incarceration was done according to the usages of civilized warfare, then they must find for the defendants, no matter whether the arrest was made by a special order of Capt. W. H. French or not." I think the court might well have refused to give the instruction as asked, and should have refused it, if it had been objected to by the defendants. It certainly is not the duty of a military officer, in time of war to wait, until some overt act is done by one, who is suspected to be an enemy, before he orders his arrest. If this were true the military would be as powerless as the officers of the civil law. They should be in time of peace but not in war. The objection urged to the additional instruction is, that it leaves the jury to decide what are the "usages of civilized warfare." We cannot say the instruction was wrong. That portion of the instruction is in the language of the special pleas, and it was the right of the plaintiff to ask the court to define to the jury the meaning of the phrase "usages of civilized warfare ;" but he did not do this, and he therefore has no right to complain that the court in effect told the jury, that if the pleas were proved, they must find for the defendants. *Sayre* v. *Edwards, supra.* p. 357.

The third bill of exceptions is to the overruling of the motion to set aside the verdict and grant a new trial. The evidence is certified and is conflicting ; and it is well settled, that when the evidence and not the facts proven is certified, and the bill of exceptions shows, that the evidence is conflicting, the Appellate Court will not reverse the judgment, unless after rejecting all the parol evidence of the exceptor in conflict with the testimony on the other side and giving full force and credit to that of the adverse party the decision of the court below still appears to be wrong. The bill of exception shows, that defendants proved, that during the war plaintiff was a Union man and opposed to the war ; that in 1861 he was ordered as a member of a militia company to go with his company to Cotton Hill, and that he failed to obey the order, and said he was a Union man and did not want to have anything to do with the war ; that on account of his Union sentiments he was considered disloyal to the Confederacy. The same witnesses for defendants, who proved the above facts, said on cross-examination, that they knew of no act of disloyalty on the part of plaintiff, that they lived near him and knew him well, and that he was a quiet, peaceable, law abiding citizen and for a time a justice of the peace, but that in sentiment he was considered disloyal ; that it was the general custom and usage in the department of the army, in which these parties were, for officers to arrest persons charged with disloyalty, and to send on for trial persons arrested and brought before them upon such a charge ; that this was pursuant to order from higher officers ; that W. H. French was a captain in the Confederate army, 8th regiment, Virginia cavalry. It was shown by the depositions of plaintiff's witnesses upon their cross-examination, that the soldiers regarded him, White, as an enemy of the Confederate States, and an adherent of the United States Government, and the understanding among the soldiers was, that he gave aid, comfort and encouragement to the scouts and adherents of the government of the United States. It is not disputed in this evidence, that Capt. W. H. French was in command in the county, where White was arrested, and that he was arrested by Capt. French's order.

We think in view of the evidence, that we are not only

under the law prevented from saying, that the judgment was wrong, but are authorized to say, that the verdict was well warranted by the evidence.   In time of war it is the duty of military commanders to be ever vigilant and see to it, that the cause, for which they have drawn their swords, does not suffer by the action of enemies within their midst, and if they have reason to suspect, that their cause is in danger at the hands of any one, they may under the usages of civilized warfare arrest such person and prevent the harm, that is threatened or feared.   In the late civil war this right as much belonged to the army of the Confederate States, as it did to the army of the United States.   There was not a particle of difference as to their rights in this respect.   If a voice could come from the sombre shades of Camp Chase, it would tell us of hundreds, who were there imprisoned, because it was suspected, that they had given or would give aid and comfort to the army of the Confederate States; and of many too, that had no more connection with the Confederate army, than the plaintiff had with the Federal army.   It was never said, that these men were deprived of their liberty contrary to the usages of civilized warfare.   It was to prevent men on either side from suffering in their persons or property by reason of such acts, that the humane provision in our Constitution was adopted.

We find no error in the judgment of the circuit court rendered in this case, and it is therefore affirmed with costs and $30.00 damages.

JUDGES HAYMOND AND GREEN CONCURRED.

JUDGMENT AFFIRMED.