# Circuit Court of the United States

FOR THE

# DISTRICT OF KANSAS.

MAY TERM, 1863.

THE UNITED STATES AGT. JOHN WARD.

*Jurisdiction: Kansas Indian Reserve: Courts.*

1. The authorities of the state of Kansas have jurisdiction to try a white man for the murder of another white man, committed on the reservation of the Kansas tribe of Indians, in said state, and no such power resides in the circuit court of the United States for the district of Kansas.

[NOTE.—See McCracken agt. Todd, 1 Kansas, 148; Clay agt. The State, 4 Kansas, 49; United States agt. Stahl, *post,* 206.]

INDICTMENT for Murder.

*By the Court*—MILLER, J.

The defendant, who is a white man, is indicted for the murder of another white man. The crime was committed in the county of Lyon, in the state of Kansas. In order to show jurisdiction of the offense in this court, it is alleged that it was committed on a reservation of land which, by treaty with the Kansas tribe of Indians, belongs to them, and was then held by them, as their property and place of residence.

The reservation consists of a small section of country, nine miles in width by fourteen in length. In the

division of the state into counties, their boundaries have been extended through it, so that parts of it are included in three different counties, in all of which regular county organizations have been established.

It is claimed by the defendants that, under these circumstances, the courts of the state of Kansas can alone take cognizance of the offense, and that this court has no jurisdiction of it; and this is the question raised by the pleadings, which we are called upon to decide.

It is very clear that the general punishment of crime, including murder, is not of the class of subjects on which the federal government has a direct authority to legislate.

It is true, that of some crimes, as treason, counterfeiting the coin, robbing the mails, etc., etc., the right to legislate is delegated to the federal government. But this is because the public interests, which are injured by these offenses, have been confided by the constitution to the care of the federal government.

If, then, the power to punish for the crime of murder exists in any given case, it must be an exception to the general rule, and must be grounded on its connection with some other subject-matter, over which the power has been granted to the federal government by the constitution, or because the offense was committed in some place over which it has exclusive jurisdiction. The right to punish for the offense, when committed in American ships on the high seas, in the navy-yards, forts, arsenals, and other places under the exclusive control of the nation, by the national gov-

ernment, has never been doubted. The power also to make laws, by which the same offense is punished in the Indian country, and in the organized territories of the United States, although it may have been doubted by some who favored the largest extension of the doctrine of squatter sovereignty, has been acted upon from the commencement of the government to the present time, by all its departments, executive legislative and judicial, and must be received as the settled doctrine at this day.

It is accordingly claimed by the prosecution, that the Kansas reservation, although within the geographical boundaries of the state of Kansas, is still Indian country, and is not within its sovereignty; and that the state has no right to extend its legislation, for the protection of life, over that reserve. That right and duty, it is contended, remain with the federal government.

By the first section of the Act of Congress, of June 30th, 1834, 4 Statutes at Large, 729, it is enacted that all that part of the United States west of the Mississippi, and not within the state of Missouri and Louisana, or the territory of Arkansas, shall be taken for the purposes of the act to be Indian country; and by the twenty-fifth section of the act it is provided, that so much of the laws of the United States as provides for the punishment of crimes committed in any place within the exclusive jurisdiction of the United States, shall be in force in the Indian country: *provided*, that the same shall not extend to crimes committed by one Indian against the person or property

of another Indian. There can be no doubt that, under this act, the court has jurisdiction of this offense, unless something has occurred, since its passage, to withdraw the locality, in which it was committed, from the effect of the statute.

We are referred to the organic act by which the territorial government of Kansas was called into existence, and to the act by which Kansas was admitted into the Union as a state, both of which are claimed to have this effect. It is unnecessary to examine the first mentioned act, as all that is or can be claimed under it, is to be found in the Act of Congress, approved January 29th, 1861, by which Kansas was admitted as one of the United States.

The first sentence of the first section of that act is as follows: "The state of Kansas shall be and is hereby declared to be one of the United States of America, and admitted into the Union on an equal footing with the original states, in all respects whatsoever."

Can it be said, with truth, that she does stand upon an equal footing with the original states, *in all respects*, while she is, without her consent, excluded from the right to enforce the laws which she makes for the protection of the lives, the persons and the property of her citizens, in any portion of her soil?

Could the right to try and punish a man for the crime of murder, have been taken from any of the original thirteen states by congress, without consent, in even the smallest portion of their territory? It would seem that the right to enforce her criminal laws, in

any part of the soil which became a part of the state of Kansas by that act, is a necessary incident to her becoming one of the states of the Union, on an equal footing, in all respects, with the others. This right is exclusive. It is not a right to be exercised jointly or concurrently with the federal government.

It needs no argument to prove that if this right, in any given locality, rests with the state of Kansas, it can not belong to the federal government.

But we are not left to rest the case in this clause of the act alone, for the framers of it seem to have held this opinion also. It appears that with some of the tribes of Indians, living within the boundaries of the proposed state, the government had treaties which bound it not to include such tribes within the territorial limits of any state or territory. Perceiving that the clause already cited, with that describing the boundaries of the state, which include, geographically, all these tribes, would subject them to the jurisdiction of the new state, if they stood alone, they attached to the section the proviso: " That nothing contained in said constitution, respecting the boundaries of said state, shall be construed to impair the rights of person or property now pertaining to the Indians in such territory, so long as such rights shall remain unextinguished by treaty between the United States and such Indians, or to include any territory which, by treaty with such Indian tribe, is not without the consent of such tribe, to be included within the territorial limits or jurisdiction of any state or territory, but such territory shall be excepted out of the boundaries, and

constitute no part of the state of Kansas, until said tribe shall signify their assent to the President of the United States to be included within said state.

It is quite obvious that the congress which passed this law, was of opinion that when it had once admitted Kansas as a state, on the same footing as the original states, the only way by which it could protect the obligations of the treaty with the Indians residing inside the boundaries of the state was to enact that such soil as the treaties covered, should constitute no part of the state of Kansas. It is also fairly inferrible that as to such parts of territory, although belonging to Indians, as were covered by such a treaty provision, a full right to legislate and exercise her general jurisdiction was intended to be conceded to the state. The exception of such territory from the jurisdiction of the state, is by a well-known rule of construction held to include all not so excepted.

The only remaining inquiry is, does the Kansas reservation come within the exception of the proviso?

The last treaty with the Kansas tribe, made in 1859, and ratified in 1861, is before us, and contains no such provision as the one mentioned.

It is conceded by counsel for the government, that none such exists in any treaty with the tribe.

We are, therefore, brought to the conclusion that the state of Kansas has jurisdiction to try the defendant for the offense set forth in the indictment, and that no such power resides in this court.

The case of the United States agt. Bailey, 1 McLean, 234, although decided before the act of con-

gress of 1834 was passed, under which jurisdiction is claimed in this case, and, therefore, not directly in point, is, in its reasoning, strongly corroborative of the views we have taken. No other case has been brought to our attention, decided by a federal court, which seems to bear upon the one before us.

ORDER.—The proceeding must be dismissed for want of jurisdiction in this court.