(February 16, 1884.)

# UTAH AND NORTHERN RAILWAY COMPANY v. FISHER, COUNTY ASSESSOR.

## [3 Pac. 3.]

TERRITORIAL LIMITS—TREATIES WITH INDIANS.—None of the lands embraced, within the boundaries of Idaho territory are excepted out of said territory by the provisions of section 1 of the organic act, except such as, by the provisions of pre-existing treaties with Indian tribes, were not, without the consent of such Indian tribes, to be included within the limits of any state or territory.

SAME.—At the time of the passage of the organic act of Idaho territory no treaty existed between the United States and any Indian tribe providing that the lands embraced within the Fort Hall Indian reservation should not, without the consent of such tribe, be included within any state or territory; such lands, therefore, became part of Idaho territory upon the passage of such organic act, March 3, 1863, and have not since been withdrawn from or excepted out of said territory.

INDIAN RESERVATION—ASSESSMENT FOR TAXATION.—The Fort Hall Indian reservation being a part of, and included within, Idaho territory and Oneida county, the property of the Utah and Northern Railway Company situated thereon is subject to taxation for territorial and county purposes.

(Syllabus by the court.)

APPEAL from District Court, Oneida County. Affirmed.

Williams & Young, for Appellant.

On behalf of the appellant we submit this case upon the authority of *Harkness v. Hyde,* 98 U. S. 476. The court is familiar with the origin and history of that case, as well as the principles laid down in the decisions. We submit that if the process of the district court of the third judicial district in and for Oneida county cannot run upon the Fort Hall Indian reservation, as was held in that case, for the same reason the taxing power of neither the county of Oneida nor the territory can extend to property situated within its limits.

William Crawford, for Respondent.

On behalf of the respondent, it is suggested that the authority relied upon by the appellant, to wit, the case of *Hark-*

*ness v. Hyde,* 98 U. S. 476, is overruled by the decision of the United States supreme court in the action of *Langsford v. Montieth,* 102 U. S. 145, with which decision this court is familiar, and upon which decision and principles laid down therein respondent confidently relies for an affirmance of the judgment of the district court.

PRICKETT, J.—This appeal has been submitted upon briefs, without oral argument. The facts as shown by the record are that the Utah and Northern Railway Company is a corporation owning and operating the Utah and Northern Railway, extending into and through the county of Oneida in this territory; that sixty-nine and eighteen one-hundredths miles of said railway is within and upon the Fort Hall Indian reservation, a tract of land situated within the exterior boundaries of said Oneida county, but which, by an order of the President of the United States, dated July 30, 1869, in pursuance of a treaty with the eastern band of Shoshones and the Bannock tribe of Indians, concluded July 3, 1868, was set apart as a reservation for the Bannock Indians; that the respondent, being the assessor and *ex-officio* tax collector of said Oneida county for the year 1882, assessed plaintiff's railroad and other property situated upon said reservation; that there was levied upon the railroad and property situated upon the reservation for the year 1882 a tax for territorial and county purposes of $4,478.42; that such tax not having been paid within the time required by law, the defendant, as tax collector, was proceeding to enforce and collect the same under the laws of the territory, by advertisement and sale of the property, when the plaintiff commenced this action to enjoin and restrain him therefrom; a temporary injunction was issued, which at the trial was by the judgment of the court dissolved and set aside, and the defendant also recovered judgment for costs. From that judgment the plaintiff appealed to this court.

The sole question presented for the consideration and decision of this court is whether or not the Fort Hall Indian reservation is a part of Idaho territory and of Oneida county. The act of Congress organizing the territory of Idaho, approved March 3, 1863 (12 U. S. Stats. 808), includes within its ex-

terior lines the tract of land now known as the Fort Hall In-
dian reservation, and by the act of the legislative assembly of
this territory creating and defining the boundaries of
Oneida county, it is included within the exterior boundaries
of that county; but section 1 of the organic act of the terri-
tory contains a proviso as follows: "That nothing in this act
contained shall be construed to impair the rights of person
or property now pertaining to the Indians in said territory,
so long as such rights shall remain unextinguished by such
treaty with the United States and such Indians, or to include
any territory which by treaty with any Indian tribes is not,
without the consent of said tribe, to be included within the ter-
ritorial limits of jurisdiction of any state or territory; but all
such territory shall be excepted out of the boundaries, and con-
stitute no part of the territory of Idaho, until said tribe shall
signify their assent to the President of the United States to
be included within said territory or to affect the authority of
the government of the United States and make any regulations
respecting such Indians, their lands, property, or other rights,
by treaty, law, or otherwise which it would have been competent
for the government to make if this act had never passed."   No
provision similar to the foregoing is to be found in any act
of Congress creating a territory prior to that organizing the
territories of Nebraska and Kansas (10 U. S. Stats. 277), and
the reason for it in that act was that before the organization
of those territories the United States, by treaty with the Shaw-
nee tribe of Indians, and perhaps other tribes, occupying lands
embraced in those territories, had agreed not, without their
consent, to include any of their lands within any state or
territory thereafter to be formed; and for the same reason
Congress required a like provision to be incorporated into the
constitutions of Kansas and Nebraska, before admitting them
into the Union.   The form of the organic act of those ter-
ritories, in this respect, seems to have been uniformly fol-
lowed by Congress in organizing the other territories created
since that time, without reference to the question whether such
proviso was needed to save and protect any rights previously
guaranteed or not.   It is not claimed that prior to the passage
of the organic act of Idaho any treaty existed containing pro-

visions similar to those in the treaty with the Shawnees, which would exclude or except out of the territory any portion of the lands embraced within the Fort Hall Indian reservation. Such lands were, therefore, included within the territory, March 3, 1863, by the terms of the organic act.

The proviso in the act creating the territories of Kansas and Nebraska, similar to that found in section 1 of our organic act above set forth, was several times considered and construed by the courts in Kansas.

In the case of *McCracken v. Todd,* 1 Kan. 148, taken by writ of error to the supreme court of Kansas, one of the questions presented was whether certain judicial proceedings which took place on the lands belonging to the Delaware Indians, when Kansas territory was organized, were not transacted without the territory, and therefore null and void. That court, after reciting the proviso, say: "This ground of objection calls for no comment by the court further than a statement that nowhere in any treaty with the Delaware Indians is there a provision that the lands of that tribe shall not, without its consent, be included within the territorial limits of any state or territory. All the lands of that tribe, within the boundaries specifically described in the law referred to, were therefore included within the limits of the territory." In the case of *United States v. Ward,* Woolw. 17, McCahon, 199, 1 Kan. 601, Fed. Cas. No. 16,639, the circuit court of the United States for Kansas, Miller, J., presiding, held that the state court, and not that of the United States, had jurisdiction to try and punish for the crime of murder committed upon the Kansas reservation, because the treaty with the Kansas Indians contained no provision excepting their reservation from the territorial limits or jurisdiction of any state or territory.

The lands embraced within the Fort Hall Indian reservation having been included within and made a part of the territory by section 1 of our organic act, passed March 3, 1863, we will next inquire whether those lands have since been withdrawn therefrom. If so, it must be because of some provision in the treaty between the United States and the eastern band of Shoshones and the Bannock tribe of Indians, concluded July 3, 1868, and of the executive order made in pursuance

thereof (15 Stats. 673), for it is by and under these that the Bannock tribe of Indians occupy said reservation. Section 2 of that treaty provides as follows: "It is agreed that whenever the Bannocks desire a reservation to be set apart for their use, or whenever the President of the United States shall deem it advisable for them to be put upon a reservation, he shall cause a suitable one to be selected for them in their present country, which shall embrace reasonable portions of the Port Neuf and Kansas (meaning Camas prairie countries), and that, when this reservation is declared, the United States will secure to the Bannocks the same rights and privileges therein, and make the same and like expenditures therein for their benefit, except the agency house and residence of agent, in proportion to their numbers, as herein provided for the Shoshone reservation." On the thirtieth day of July, 1869, in pursuance of this treaty, the President, by order of that date, set apart the Fort Hall Indian reservation for the use and occupation of the Bannocks; but there is nothing in this treaty or order from which to imply that such tract of land was withdrawn from or taken out of the territory of Idaho. It was set apart merely for the use and occupation of the Bannock tribe of Indians.

The appellant relies for the reversal of the judgment in this case upon the decision of the supreme court of the United States in *Harkness v. Hyde,* 98 U. S. 476. That court there held that the territory embraced within the Fort Hall Indian reservation was "as much beyond the jurisdiction, legislative or judicial, of the government of Idaho as if it had been set apart within the limits of another country or of a foreign state," which would certainly be conclusive in favor of the position assumed by the appellant but for the decision of the same court upon the question subsequently rendered in the case of *Langford v. Monteith,* 102 U. S. 145, which is relied upon by counsel for respondent. In the last case cited Mr. Justice Miller, delivering the opinion of the court, says: "The act of Congress of March 3, 1863, to provide a temporary government for the territory of Idaho (12 Stats. 808), contains a clause precisely similar to that admitting Kansas into the Union. This court, in *Harkness v. Hyde, supra,* relying upon

an imperfect extract found in the brief of counsel, inadvertently inferred that the treaty with the Shoshones, like that with the Shawnees, contains a clause excluding the lands of the tribe from territorial or state jurisdiction. In this, it seems, we were laboring under a mistake. Where no such clause, or language equivalent to it, is found in a treaty with Indians within the exterior limits of Idaho, the lands held by them are a part of the territory and subject to its jurisdiction, so that process may run there, however the Indians themselves may be exempt from that jurisdiction." The decision in the case of *Harkness v. Hyde* is therefore no longer authority upon the point made in the appellant's brief.

Our conclusion is that the railroad and property of the appellant is subject to taxation, notwithstanding its location and situation upon the Fort Hall Indian reservation.

The judgment of the district court is affirmed.

Morgan, C. J., and Buck, J., concurred.