## Case No. 14,495.

### UNITED STATES v. BAILEY.

[1 McLean, 234.] [1]

Circuit Court, Tennessee. [2] Oct. Term, 1834.

CONSTITUTIONAL LAW — POWERS OF CONGRESS — FEDERAL TERRITORIAL JURISDICTION—INDIAN COUNTRY WITHIN STATE—MURDER.

1. The powers of the federal government are limited.

2. It possesses no powers but such as have been delegated.

3. Congress have power to regulate commerce among the Indian tribes, which affords a wide scope for legislation.

4. Under a similar power, as regards foreign nations, congress have passed non-intercourse,

[1] [Reported by Hon. John McLean, Circuit Justice.]

[2] [District not given.]

embargo, and other acts which are admitted to be constitutional.

5. Congress have a right to select the means, which have a direct relation to the object, in the regulation of commerce with the. Indians.

6. Such are the provisions of the intercourse law of 1802 [2 Stat. 139].

7. But congress cannot under this investure of power exercise a general jurisdiction, over an Indian territory within a state.

[Cited in U. S. v. Ward. Case No. 16,639.]

[Cited in State v. Doxtater, 47 Wis. 292, 2 N. W. 447.]

8. In a territory of the United States where congress possesses the legislative power, there can be no objection to the power.

9. Congress cannot punish for an offence, within the Indian territory, in a state, which has no relation to the Indians, and which cannot affect their commerce..

[Cited in U. S. v. Ward, Case No. 16,639.]

10. The act of 1817 [3 Stat. 383], which assumes to exercise a general jurisdiction over Indian countries, within a state, is unconstitutional, and of no effect.

[Cited in U. S. v. Sa-coo-da-cot, Case No. 16,-212. Disapproved in U. S. v. Partello, 48 Fed. 674.]

[Disapproved in State v. Campbell, 53 Minn. 358, 55 N. W. 555.]

11. The crime of murder charged against a white man for killing another white man, in the Cherokee country, within the state of Tennessee, cannot be punished in the courts of the United States.

[Cited in U. S. v. Sa-coo-da-cot, Case No. 16,-212; Ex parte Sloan, Id. 12,944.]

Mr. McKinney, U. S. Dist. Atty.

Mr. Meigs and others, for defendant.

OPINION OF THE COURT. The defendant, a white man, has been indicted for the murder of a white man in the state of Tennessee, and within the limits of the Indian country occupied by the Cherokees. A plea to the jurisdiction of the court has been filed, and it becomes the duty of the court to decide the question raised by the plea.

The indictment is found under the first section of the act of congress of 1817 which provides, that "if any Indian, or other person or persons, shall, within the United States, and within any town, district, or territory, belonging to any nation or nations, tribe or tribes of Indians, commit any crime, offence or misdemeanor, which if committed in any place or district of country under the sole and exclusive jurisdiction of the United States, would by the laws of the United States, be punished with death, or any other punishment, every such offender, on being thereof convicted, shall suffer the like punishment, as is provided by the laws of the United States for the like offence, if committed within any place or district of country under the sole and exclusive jurisdiction of the United States." From the provisions of this section no doubt can be entertained, that it was the intention of congress to punish all offences specified; and especially the crime of murder committed in the Indian country, though within the limits of a state;

and the jurisdiction of the court must be sustained, unless this act shall be found repugnant to the constitution of the United States. This is a grave question, involving on the one hand the life of a fellow being, and on the other the powers of the federal government. At October term, 1816, of this court, an indictment was found against two Indians for killing Vincent Davis, a white man, on a public road passing through the Cherokee Nation of Indians, ceded by treaty with the Cherokee Nation to the United States. A plea to the jurisdiction being filed in the case, the court decided against the jurisdiction on the ground that there was no law of the United States, which "makes the facts as charged and laid in said indictment a crime, affixes a punishment and declares the court which shall have jurisdiction of it." The failure of this prosecution, it is suggested, led to the passage of the act now called in question.

That the federal government is one of limited powers, is a principle so obvious as not to admit of controversy; though the extent of those powers has given rise to much discussion and wide differences of opinion. It would seem however, to be clear, from the 10th article of the amendments to the constitution which provides, that the powers not delegated to the United States by the constitution, nor prohibited by it to the states, are reserved to the states respectively or to the people; and from other considerations, that the federal government can exercise no powers beyond those which are expressly delegated to it. When therefore the validity of an act of congress is called in question, we must look to the constitution for the power to pass such an act. In the present case the power is alleged to be given by the 3d article, in the 8th section of the constitution, which declares, that congress shall have power "to regulate commerce with foreign nations and among the several states, and with the Indian tribes." There is no other clause of the constitution which can have any bearing upon the point under consideration; and if the power is not given by this article, it is given nowhere. On the part of the prosecution it is insisted, that congress had power to pass the law in question; and that laws involving the same principle have been enforced by the courts of the United States. The intercourse law of 1802, and other acts of congress, and Indian treaties are referred to; and the decisions of the supreme court and of the circuit courts of the United States, under these laws, it is contended, sustain this position. Under the power to regulate commerce with the Indian tribes, there is undoubtedly a wide scope for legislation; and that too without extending the power beyond what has been exercised in relation to foreign nations. Acts of non-intercourse have been passed; embargos have been imposed, and other restrictions in a great variety of forms

have been enacted, affecting foreign commerce, which are admitted to come within the constitutional powers of congress. So as it regards the Indians, various laws have been passed under the above grant of power. The act of 1802 prohibits all intercourse with the Indians, by the whites, except on certain conditions. Agents and other persons are permitted to reside among them for the advancement of their prosperity; and to facilitate our commercial intercourse with them. The persons of these agents are protected from violence and injustice; and our own citizens are punished for committing violence upon the persons or property of the Indians. All these provisions come clearly within the scope of the power to regulate commerce with the Indian tribes; and substantially the same power has been exercised in regulating commerce with foreign nations. All intercourse with a foreign nation, as before remarked, may be prohibited; or it may be admitted under a license or permit. Our agents abroad are protected, and we punish depredations committed by our own citizens on the persons or property of a foreign people, with whom we are at peace. Thus far it would seem the power may be exercised by congress, both as it relates to foreign nations and our Indian tribes. But the act under consideration asserts a general jurisdiction for the punishment of offences, over the Indian territory, though it be within the limits of a state. To the exercise of this jurisdiction within a territorial government there can be no objection, but the case is wholly different as is regards Indian territory within the limits of any state. In such case the power of congress is limited to the regulation of a commercial intercourse, with such tribes of Indians that exist, as a distinct community, governed by their own laws, and resting for their protection on the faith of treaties and laws of the Union. Beyond this, the power of the federal government, in any of its departments cannot be extended.

It is argued that unless the defendant can be tried under the act of congress, there is no law by which he can be punished. If on this ground the federal government may exercise jurisdiction, where shall its powers be limited? The constitution is no longer the guide, when the government acts from the law of necessity. This law always affords a pretext for usurpation. It exists only in the minds of those who exercise the power, and if followed must lead to despotism. It will not be pretended that congress can ever exercise jurisdiction over such parts of a state, as may not be organized into counties. And yet is not this substantially the case under consideration? A murder has been committed by one white person on another within the Indian territory which act in no respect is connected with the commerce of the Cherokee Indians, or interferes with their prosperity or safety. That congress have power to inflict punishment on all who violate the laws, which regulate a commercial intercourse with the Indians, who maintain a certain relation to the federal government, is admitted; but because this is a legitimate exercise of power, does it follow that the jurisdiction may be extended without limit? Is the Cherokee territory subject to the jurisdiction of the federal government, to the same extent, as it may exercise over forts and arsenals where a cession of jurisdiction has been made by a state. In the act of 1817, congress seem to have considered their power as unlimited in the one case as in the other, as to the punishment of offences; for they provide that the same punishment shall be inflicted, for the commission of crimes within the Cherokee country, as for the like offences, if committed within any place or district of country under the sole and exclusive jurisdiction of the United States. The Cherokee country can in no sense be considered a territory of the United States, over which the federal government may exercise exclusive jurisdiction; nor has there been any cession of jurisdiction by the state of Tennessee; or any prohibition to its exercise of jurisdiction over this territory, constitutionally, except such as the rights recognized and guaranteed to the Indians by treaties and the laws regulating commerce with them, may impose. But it is not necessary in determining the question of jurisdiction in this case, to decide whether any or what jurisdiction may be exercised by the state of Tennessee over the Cherokee country within her limits. If the state has no jurisdiction, or has failed to exercise it, it does not follow that the federal government has a general and unlimited jurisdiction over the territory; for its powers are delegated, and cannot be assumed to supply any defect of power on the part of the state. It is clear that the state of Tennessee either by failing to exercise jurisdiction or by positive enactment, short of a cession of jurisdiction for purposes specified in the constitution, can neither enlarge nor diminish the powers of congress on the subject. The state of New York, for many years has punished its citizens for crimes committed in the Indian territory within its limits; and the state of Georgia, before its laws were extended over the Cherokee country, within the state, punished its own citizens for offences committted within that territory; and we are not aware that the right of either state to do this has been questioned. It is not pretended that any provision by treaty, between the Cherokee Nation and the federal government has been made to embrace a case like the present; or that the treaty-making power can be thus exercised. The connection which exists by treaty between the Indian tribes and the federal government, is of a political character; and the enforcement of such stipulations must mainly depend on the executive power. There is nothing, therefore, in the treaties referred to, which can give to this court jurisdiction of

the offence charged in the indictment. This prosecution cannot be sustained, except upon the ground that congress may exercise the same general and exclusive jurisdiction over the Cherokee country, as over a territory of the United States. In this view, if one citizen commit a depredation upon the property of another, or do violence to his person, within the boundaries of the Indian lands within a state, he may be arrested and punished under the act of congress. Indeed it would be difficult to prescribe any limit to this legislative power, if it may be extended beyond the objects for which it was given. It is insisted that the word "commerce," as used in the constitution, is not necessarily limited to the purposes of trade; but may well be construed to embrace every species of intercourse, which the federal government may think proper to establish with our Indian nations. That the word "commerce" does refer to trade, would seem to be clear, from its being used in the same sentence in reference to foreign nations; but it is admitted that the "power to regulate commerce with the Indian tribes" confers on congress the right of selecting such means as may be necessary to attain the object of the power. But these means must have a direct relation to the object. Congress have power to establish post offices and post roads, consequently, they have power to protect the mail of the United States, by providing for the punishment of those who violate it. They have power to coin money, and they may provide for the punishment of those who shall counterfeit the coin. They have power to regulate commerce with the Indian tribes, consequently, they may provide by law in what manner this intercourse shall be carried on, and impose penal sanctions for a violation of the law. But may they by reason of this special power, assume a general jurisdiction and prescribe for the punishment of all offences? If this may be done under the power to regulate commerce with the Indian tribes, why may it not be done in all other cases, where a limited power is exercised by congress to effectuate a special object? Congress have power to regulate commerce among the several states; and if the same power, given in the same words, in relation to the Indians, may be exercised as contended, why may not congress legislate on crimes for the states generally? That congress have not this general power, is a proposition too clear for demonstration. The thing itself is so palpable that it is susceptible of no illustration. Who would attempt after reading the federal constitution, to prove by any course of argument, that this is a limited government? The very instrument that gives existence to the government imposes the limitations. And is it not equally clear, that where a special jurisdiction has been given to congress, a general one cannot be exercised? Is not the jurisdiction under consideration special? Does it not relate exclusively to the regulation of commerce, with

the Indian tribes? And does not the act in question provide for the punishment of a crime committed by one citizen upon another, wholly disconnected from any intercourse with the Indians? If this be a constitutional provision, the jurisdiction by congress for the punishment of offences in the Indian country, within the boundaries of any state, is without limit. Believing that in the passage of this provision of the act of 1817, congress have transcended their constitutional powers, I feel bound to say so, and consider this part of the act as having no force or effect.