FORTY-THREE GALLONS OF COGNAC BRANDY.

PALCHER and others *v.* UNITED STATES.

(*Circuit Court, D. Minnesota.* March 24, 1882.)

1. GOVERNMENT—INDIAN COUNTRY.
   Section 1 of the act of congress of June 30, 1834, (4 St. at Large, 729,) defining the "Indian country" as "all that part of the United States west of the Mississippi, and not within the states of Missouri and Louisiana, or the territory of Arkansas, and also that part of the United States east of the Mississippi river and not within any state, to which the Indian title has not been extinguished," was repealed by section 5596, Rev. St., and consequently the description of the "Indian country" found in section 1 of the act of 1834 is no longer a part of the law of the land. The question as to what is the Indian country, since the repeal of said section, not decided.

2. SAME—SEIZURE OF LIQUORS.
   A search for and seizure of liquors under the provisions of section 2140, Rev. St., which provides for the enforcement of a penalty and forfeiture for introducing spirituous liquors and wines into the Indian country, in a case where the liquors found were not claimed to have been seized within the limits of an Indian reservation, was *held* unauthorized.

On Writ of Error from the District Court.

This action is brought up for review from the district court of the district of Minnesota on writ of error. The proceedings in the lower court were instituted under the provisions of section 2140, Rev. St., which empowers certain United States officers to search for and seize any spirituous liquors or wines introduced or about to be introduced into the "Indian country," and if any such be found to seize the same,

and all the conveyances used in introducing the same, as well as all the goods, packages, and peltries of such persons so introducing the same; to be proceeded against by libel in the proper court as forfeited, one-half to the informer, and the other half to the United States.

Section 2140, Rev. St., provides for the enforcement of the penalty for the violation of the provisions of the preceding section, which prohibits the introduction of spirituous liquors or wines into the "Indian country;" and it was contended in this case, by the prosecution, that the territory known as the "Northwestern Angle," on the northern extremity of Minnesota, where the liquor was found, is a part of the "Indian country" into which the statute prohibits the introduction of such commodities.

McCRARY, C. J. The point most discussed on the hearing is one which was not brought to the attention of the court below, but which may nevertheless be raised here, as it goes to the question whether there is any statute of the United States now in force which locates and defines the extent or boundaries of the Indian country. The first section of the act of congress of June 30, 1834, (4 St. 729,) defines the Indian country as follows: "All that part of the United States west of the Mississippi, and not within the states of Missouri and Louisiana, or the territory of Arkansas, and also that part of the United States east of the Mississippi river and not within any state, to which the Indian title has not been extinguished." There is no other statutory definition or description of the Indian country. Our first inquiry will be, is the first section of the act of June 30, 1834, still in force, or has it been repealed by the enactment of the Revised Statutes of the United States? The section is not found, either in form or substance, re-enacted in the Revision. It is entirely omitted therefrom. Other portions of that act are embodied in the Revision, as will be seen by reference to sections 2129, 2130, 2131, 2132, 2133, 2134, and 2155.

The Revised Statutes, § 5596, provide that—

"All acts of congress passed prior to said first day of December, 1873, any portion of which is embraced in said Revision, are hereby repealed, and the section applicable thereto shall be in lieu thereof; all parts of such acts not contained in said Revision having been repealed or suspended by subsequent acts, or not being general or permanent in their nature: provided, that the incorporation into said Revision of any general or permanent provision, taken from an act containing other provisions of a private, local, or temporary character, shall not repeal or in any way affect any provision of a private, local, or temporary character contained in any of said acts, but the same shall remain in force," etc.

It is plain that the first section of the act of 1834 is repealed by this legislation, unless it comes within the proviso just quoted, as being in its nature private, local, or temporary. The act of 1834, known as the trade and intercourse act, considered as a whole, was, in my judgment, a public act, permanent in its character, and of great general importance. It was neither local, private, nor temporary, within the ordinary signification of those terms, as used in the acts of congress. It established an elaborate and comprehensive code, regulating trade and intercourse with the Indian tribes, and provided for the punishment criminally of all persons violating any of its provisions. Looking at the entire act, no lawyer would think of classing it among the statutes usually denominated local, private, or temporary. But it is said that while the general provisions of the act are of a public and general character, the first section is both local and temporary.

It is insisted that the said section is local, because those parts of the acts dependent upon it for their applicability are by said section limited to a portion of the United States, and not to the whole. This point is not well taken. The statute concerned all the people of the United States. It binds all within the jurisdiction of the law-making power, although its operation may be limited to the territory described. The proper definition of a private or special statute is one which relates to certain individuals or particular classes of men. Statutes which relate to matters of public policy, as contradistinguished from those which relate to private interests and particular individuals only, are public acts; and hence it has been held that statutes for the establishment of towns and counties, the erection of court-houses, bridges, and ferries, and the like, are public acts. So, also, are acts which, though affecting a particular locality, apply to all persons. Upon this general subject see Sedgwick, St. & Const. 30 to 33, inclusive; *Clark* v. *City of Janesville*, 10 Wis. 186; *Iowa County Seat Case*, 9 Wis. 279.

It follows that whether we consider section 1 of the act of 1834 by itself (as I think we must) as a part of the entire act, and therefore as constituting a part of a code or system of laws, it must in either case be held that it is a general and not a local statute. Is it in its nature a temporary statute? Generally speaking, a permanent statute is one which is understood to continue in force till its repeal; and it is argued that because, if this section may, at some time in the future, cease to have any force and effect, or, in other words, become

obsolete, by the extinguishment of the Indian titles to all comers within the United States, therefore it is temporary and not permanent, within the meaning of section 5596 of the Revised Statutes. I am unable to concur in this view. It is evident that Congress did not use the word "permanent" in this sense, but rather as applying to all acts of Congress of a general and public nature which were in force on the first day of April, 1873, and which were so far permanent as that, if not repealed or re-enacted, they would have continued in force as the law of the land for an indefinite period of time.

The purpose of the Revision was to bring together in one volume all the statutory laws of the United States, except such as did not concern the whole country by reason of their being private, local, or temporary in their nature. The Code of Criminal Law for the punishment of offences within the Indian country, as long as any Indian country shall exist within the jurisdiction of the United States, was, in my opinion, a permanent statute, within the meaning and intent of congress. I am constrained, therefore, to hold that section 1 of the act of 1834 was repealed by the Revised Statutes of the United States, and that consequently the description of the Indian country found in that section is no longer a part of the law of the land.

What, then, are we to understand by the words "Indian country" as used by congress in the statute under which this proceeding was instituted, and in the various other acts of congress; as, for example, in sections 2064, 2127, 2129, 2131 to 2149, inclusive, 2152, 2153, 2154, and 2156? I am not prepared to deny the proposition that these words must be held to have a meaning; nor do I say that it may not be the duty of the court in a proper case to determine what the meaning is, since congress has used the words without defining them. It may be a question of considerable nicety, as it certainly is a question of great importance, whether in a criminal or quasi-criminal proceeding a court can undertake to say what parts of our vast territorial domain come within the description. Upon one point, however, I am clear, and that is all that I am called upon to decide. If necessity required the court to determine the meaning of the words the "Indian country," in the absence of any statutory definition, I should, in a criminal case, in obedience to the rule which requires that the words in a penal statute shall be construed strongly in favor of the accused, hold that the Indian country is that portion of the public domain which is set· apart as a reservation or as reservations for the use and occupancy of the Indians, and not the whole vast extent of the national domain to which the Indian title has not been extinguished. I do not say

that I would in any criminal case undertake to define the meaning of the words "Indian country" as used in the statutes of the United States, but I do say that the meaning just suggested seems to me more reasonable than the one insisted upon by the district attorney in this case; and for that reason, as well as because of the penal character of the statute, I should feel constrained, if I were to define these terms at all, to construe them as synonymous with Indian reservations.

In this case it is not claimed that the liquor was seized within the limits of an Indian reservation, and it follows, according to the view I have taken of the statutes, that the seizure was unauthorized.

Without, therefore, discussing any of the other questions raised by counsel, as this conclusion is decisive of the case, it is ordered that the decree of the district court be reversed, and the cause be remanded to that court for further proceedings in accordance with this opinion.

NOTE. Congress may exercise its power to regulate commerce with the Indian tribes to the same extent as with foreign nations. *U. S.* v. *Cisna*, 1 McLean, 254. The power to regulate intercourse between the tribes and individual Indians includes the power to prohibit the traffic in spirituous liquors. *U. S.* v. *Shaw-mux*, 2 Sawy. 364. The power may be exercised, although the traffic is wholly within the territorial limits of a state. *U. S.* v. *Holliday*, 3 Wall. 407. When the Indian territory is within the limits of a state, congress is limited to the regulation of commercial intercourse with such tribes as exist as a distinct community, governed by their own laws, and resting for their protection on the faith of treaties and laws of the Union, (*U. S.* v. *Bailey*, 1 McLean, 234; *U. S.* v. *Cisna*, Id. 254; *State* v. *Foreman*, 8 Serg. 256;) and the state cannot withdraw them from the operation of the laws of Congress. *U. S.* v. *Holliday*, 3 Wall. 407. Indians on a reservation within a state are not citizens or members of the body politic, but are considered as dependent tribes, governed by their own usages and chiefs. *Holden* v. *Joy*, 17 Wall. 211; *Goodell* v. *Jackson*, 20 Johns. 693; *Jackson* v. *Wood*, 7 Johns. 290; *Strong* v. *Waterman*, 11 Paige, 607. So the liability of an inn-keeper on an Indian reservation within the limits of a state is to be determined according to the laws of the tribe. *Horland* v. *Pack*, Peck, (Tenn.) 151. Where the country occupied by Indians is not within the territorial limits of a state, congress may provide for the punishment of offences there, no matter by whom committed. *U. S.* v. *Rogers*, 4 How. 567. The carrying of spirituous liquors into a territory purchased by the United States after March 30, 1802, although frequented and inhabited exclusively by Indians, is not an offence within the meaning of the acts of congress so as to subject to forfeiture. *American Fur Co.* v. *U. S.* 2 Pet. 358. If Indians occupy territory of very limited extent, surrounded by a white population which necessarily have daily intercourse

with them, and it becomes impracticable to enforce the law, the federal jurisdiction must cease. *U. S.* v. *Cisna,* 1 McLean, 254. The circuit court having concurrent jurisdiction with the district court over crimes, has jurisdiction over the offence of selling liquor to Indians, although jurisdiction may be vested by statute in the district court. *U. S.* v. *Holliday,* 3 Wall. 407.—[ED.