## CHARLESTON.

CARNEGIE NATURAL GAS COMPANY *v.* SWIGER *et als.*

Submitted February 13, 1912.   Decided May 27, 1913.

1. EMINENT DOMAIN—*Statutes—Constitutional Law—Right of Way for Pipe Lines—"Due Process."*

   Chapter 74, Acts 1907, amending and re-enacting sections eighteen and twenty, of chapter forty-two, Code 1906, and providing thereby for an alternative method of condemning land or easements by pipe line companies for transporting carbon oil or natural gas, is valid, and not violative, either of section 30, art. 6, or sections 9 and 10, art. 3, of the Constitution of this State, or of the fourteenth amendment to the federal Constitution.   (p. 559).

2. SAME—*Right of Way for Pipe Lines—Description—Sufficiency.*

   Such right of way or easement authorized when less than the fee is taken need not describe a definite width or depth, but must pursue a definite line, with courses and distances given, and have definite and fixed termini.   (p. 568).

3. SAME—*Right of Way for Pipe Lines—Public Use.*

   The evidence in this case sustains the finding and judgment of the court below as to the public use of the right of way or easement proposed to be taken.   (p. 570).

4. SAME—*Pipe Lines—Condemnation of Right of Way—Public Use.*

   Where by general law such pipe line company is authorized to take such rights of way or easements for its public service, the right of the public therein, and the reasonableness of the charges for the service, though not written in any statute or ordinance, is sufficiently protected by general law, to warrant the taking thereof for such public use.   (p. 571).

5. SAME—*Public Service Corporation—Discretion.*

   Where such public service corporation is so authorized, and enters upon and assumes the duties of its public service, there is public need for rights of way and easements justifying the taking of private property therefor, and what is necessary is generally a matter within its discretion not controllable by the courts.   (p. 571).

6. SAME—*Pipe Lines—Condemnation of Right of Way.*

   That but few persons are being served at the time such right of way or easement is proposed to be taken will not defeat the right of such company to take such right of way or easement if the real purpose is to serve the public.   (p. 572).

7.    SAME—*Pipe Lines—Condemnation of Right of Way—Public Benefit—Questions for Court.*

The question of the public need or benefit of such proposed right of way or easement is generally a question for the court and not one of fact for jury trial.    (p. 573).

(LYNCH, JUDGE, absent).

Error to Circuit Court, Harrison County.

Action by the Carnegie Natural Gas Company against A. G. Swiger, the Swiger Coal Company, and others.    From a judgment for plaintiff, the defendants named bring error.

*Affirmed.*

*Charles G. Coffman,* for plaintiffs in error.

*Hall & Hall,* for defendants in error.

MILLER, JUDGE:

Petitioner elected to proceed pursuant to the alternative method prescribed by section 20, chapter 42, Code Suppl. 1909, chapter 74, Acts 1907, to condemn an easement or right of way less than a fee for a natural gas pipe line through defendant's lands, according to a plan attached to the bond tendered defendant showing the route of its proposed pipe line through his lands.

Failing to agree with him as to the damages, and defendant refusing to accept the bond tendered him, petitioner, after five days notice, presented the same to the Judge of the Circuit Court in vacation, as prescribed by the statute, and also its petition praying among other things that said bond be approved. Whereupon defendant appeared and demurred to the petition, which being joined in by petitioner and argued by counsel the court took time to consider, giving to petitioners, over objection by defendant, leave to file said bond and to make the same part of the record, but denying petitioner, until the further order of the court or judge, right of entry on the land.

On a later day, having considered the matters of law arising upon the prior proceedings, the judge was of opinion to approve the bond, unless within three days defendant should except to the form, amount, or surety, and file his exceptions with the clerk, and to that end continued the case to July 22, 1911, in chambers.

On the day to which the case was so adjourned defendant again appeared, and tendered and asked leave to file certain objections in writing to the proceedings, also their objection to the amount and form of the bond, none to the surety, and also some nine special pleas in writing, and an additional paper entitled plea and further exceptions to the bond and approval thereof; and also made other motions not material and which need not be considered.

At a later day the demurrer was overruled, defendant's pleas numbered 1, 2 and 3, and his so called plea and further exceptions were filed, but pleas numbered 4 to 9, inclusive, were rejected, and issue was joined on the several pleas filed. Without passing on the exceptions to the bond the court directed the testimony to be taken on the issues presented by the pleas, and on final hearing, on September 29, 1911, pronounced the judgment now complained of, finding that petitioner had the right to condemn the right of way or easement over defendant's lands for the purposes set forth in its petition, and finding the same sufficient in all particulars, approved the bond filed, and further found, ordered and directed that petitioner had the right to and might at any time and immediately, if necessary, enter upon said easement or right of way for the purpose of constructing its pipe line as proposed in its petition, to which rulings and judgment exceptions were taken and saved on the record.

The pleas rejected so far as material are covered by those filed and there was no prejudicial error in rejecting those not filed. The issues presented by the demurrer and the several pleas and motions filed, and to which the evidence relates, will now be considered.

First, it is affirmed that said chapter 74, Acts 1907, amending and re-enacting sections eighteen and twenty of chapter forty-two, providing thereby for the alternative method of condemning land or easements by pipe line companies organized for transporting carbon oil or natural gas, is unconstitutional: (1) For infringing section 30, art. 6, of the constitution, providing that "No act hereafter passed, shall embrace more than one object, and that shall be expressed in its title"; (2) for the infraction of section 39, of the same article, providing "And in no case shall a special act be passed, where a general law

would be proper, and can be made applicable to the case"; (3) because violative of the due process provisions of section 10, art. 3, of our constitution, and of the fourteenth amendment to the federal constitution, and (4) because it authorizes the taking of private property for public use without just compensation paid or secured to be paid, contrary to section 9, art. 3, of our constitution.

On the first proposition it is contended that the object of the act is concealed in the title, and falls within the condemnation of our case of *Stewart* v. *Tennant,* 52 W. Va. 559, 572. The title of the act is: "An Act to . amend and re-enact sections eighteen and twenty of chapter forty-two of the code, relating to taking land without the owner's consent for purposes of public utility." Before the adoption of our Code of 1868, and in a proceeding begun under Code Va. 1860, and before the statute so specifically provided, the right of a pipe line company, organized for transporting carbon oil, to take land by condemnation was upheld by this court. *West Va. Transp. Co.* v. *Vol. O. and C. Co.,* 5 W. Va. 382. Prior to chapter 18, Acts 1881, our statute did not as therein enumerate the public uses for which private property might be taken or damaged. Among the purposes enumerated in section 2 of that act, is, "Fifth—For companies organized for the purpose of transporting carbon oil by means of pipes or otherwise." Pipe lines for transporting natural gas are not mentioned. So far as we know there were no pipe lines then existing in this state for transporting either oil or natural gas, except the West Virginia Transportation Company, plaintiff in the case just referred to. By chapter 7, Acts 1885, companies organized for transporting natural gas were included in said section 2, and the method of procedure prescribed for taking land for public utility was the same for all companies. The law so remained until the passage of the Act of 1907, now in question. By section 18, of said chapter 42, as thus amended, pipe line companies were included along with railroad companies, entitled to describe as to any or all of the land proposed to be taken an estate or interest therein less than a fee. And by the amendment of section 20, thereof, the alternative method of procedure for such pipe line companies was prescribed, in the three paragraphs added thereto, and which paragraphs constitute the subject of the con-

stitutional objections already alluded to. By the first of these paragraphs it is provided that in addition to the other procedure, such company may at its election attempt to agree with the owner as to the damages, failing in which, it shall tender him a bond with sufficient surety to secure him payment of the damages, to which bond a plan showing the route of the proposed pipe line shall be attached; and upon the acceptance of this bond the right of the applicant to enter upon the enjoyment of the easement shall be complete; if the owner refuse to accept the bond it is provided that the same shall be presented to the circuit court or the judge thereof in vacation, after five days written notice to the owner stating the time and place of such proposed presentation, and which shall state that unless exceptions to the form, amount or surety of the bond be filed within three days after presentation said bond shall be approved by the court. The second of the added paragraphs provides that if no exception be filed thereto the court shall approve the bond and direct the same, with the plan attached, to be filed for the benefit of both owner and applicant; but if exception be filed the court is required to fix a day, not more than five days thereafter for the hearing thereof, and may require evidence as to the sufficiency of the sureties, and amount of the bond, and may require new surety, and a bond for a larger amount, or in a more satisfactory form, and upon the approval of the bond and filing thereof the right of the applicant to enter as aforesaid shall be complete. The third of the added paragraphs provides: "Upon petition of either the property owner or the applicant, at any time after said bond shall have been presented and filed, five disinterested free holders shall be appointed as in this chapter provided, to serve as commissioners to ascertain what will be a just compensation to the person entitled thereto for the easement so appropriated, and thereafter the proceedings shall be in accordance with the provisions of this chapter."

The question now recurs, is the object of the act so concealed as to render it void for embracing more than one object in its title? We think not. The only object of the amendment of said section eighteen was to classify pipe line companies along with railroads as entitled in certain cases to take "an estate or interest less than a fee." This amendment was certainly fairly covered by the title of the act. The only purpose

of the amendment of section 20, evidently because the legislature thought it expedient and proper, was to provide a more speedy and summary remedy for obtaining possession of the easement than in other cases. We see nothing in this not fairly covered by the title of the act. It is certainly comprehended in the title of the act amendatory of the general law relating to the taking of land without the owners consent for the purpose of public utility. The only change effected is in the method of procedure and in the form of security, not in the essential rights of the owner of the land. His right of trial by jury on the question of damages, and to contest before the court the right to take the land, is fully preserved. In this case the court did not approve the bond or let the applicant into possession, until all issues on the pleas filed had been fully heard on the merits, a commendable practice, when as in this case the right to take and the public purpose of the taking has been challenged by the owner of the land. Besides, everything is covered into the general law. The act involved in *Stewart* v. *Tennant,* was a special act; its title was: "An Act concerning the limitation of actions in certain cases." As the court says in that case, an examination of the act shows its singleness of object, and that it is not constitutionally objectionable on that ground. The remaining question decided was, whether that object was sufficiently expressed in the title, and it was held not to be so expressed. We need not repeat here the reasonings in that case differentiating it from a case like this, involving an act amendatory of a general law, covering the whole subject of taking private property for public utility. The generality of the title of the act involved in *Stewart* v. *Tennant* distinguishes it from this case, and renders inapt as well that case as other authorities cited and relied upon by the plaintiff in error, namely, 1 Lewis' Sutherland Stat. Const., section 123; *Beverly* v. *Waln,* 57 N. J. L. 143, 144, 30 Atl. 545; Cooley's Const. Lim. (7th ed.) 205; *Board of Supervisors* v. *McGruder,* 84 Va. 828, 832; *State* v. *Steelman,* (N. J.) 49 Atl. 978; 26 Am. & Eng. Ency. Law, 582. In the act here involved the sections of the general law so amended were inserted at large in the new act, in compliance with another provision of section 30, art. 6, of the constitution. The cases decisive of the real question here presented are *Heath* v. *Johnson,* 36 W. Va. 782, and *Roby* v. *Sheppard,* 42 W. Va.

286. In *Heath* v. *Johnson,* the act involved was entitled "An Act to amend, 'An Act to amend and re-enact section 58 of chapter 45 of the Code of West Virginia.'" That act was objected to as violative of article 6 of the constitution. This court said in that case: "We do not think this objection to the law is sound. The provision cited seems to refer rather to original acts than to those which are only amendatory; but, supposing it to apply to the latter, when the amendment in its title points not only to the chapter which is to be amended, but to the very section, it seems to us to amount to a sufficient expression of the object of the law to prevent any of the evils which the constitutional provision was intended to remedy." The first point of the syllabus in that case is: "When the title of an original act of the legislature sufficiently expresses its object in the manner required by the constitution, an act amendatory thereof may, by its title, simply refer to the section of the original act which it is intended to amend, and this will be a sufficient compliance with section 30 of article 6 of the constitution." *Roby* v. *Sheppard* is equally in point, as points two and three of the syllabus, and the reasons of the court, at pages 289-292, inclusive, will show. See, also, 12 Ency. Dig. Va. & W. Va. Rep. 777.

The next question is does the amending act of 1907 violate section 39, of art. 6, of the constitution, inhibiting special legislation where a general law would be proper? It seems almost a waste of time to reply to this proposition in view of what has been said on the first. It is contended, however, that as the amendments affected only pipe line companies transporting oil and natural gas, their effect was to single out that class of corporations and legislate specially with reference to them, and to bring the act within the inhibition of the constitution. To support this proposition counsel cite and rely on *State* v. *Cooley,* 56, Minn. 540; 1 Lewis' Sutherland Stat. Const., 149, 353; *In re Church,* 92 N. Y. 1; *Wheeler* v. *Philadelphia,* 77 Pa. St. 338, 348; *Wallis* v. *Williams,* 101 Tex. 395, 108 S. W. 153; *Palcher* v. *U. S.,* 11 Fed. 47; *Ex parte Westerfield,* 55 Cal. 550, 36 Am. Rep. 47; *Groves* v. *County Court,* 42 W. Va. 596; *McEldowney* v. *Wyatt,* 44 W. Va. 711; *Violett* v. *Alexandria,* 92 Va. 561; Cooley's Prin. Const. Law, 241, 243, 244; Cooley's Const. Lim.

502; *Hager* v. *Reclamation Dist.,* 111 U. S. 701, 28 L. Ed. 569. We think these authorities quite inapt to support the proposition. All pipe line companies carrying oil and gas as a class are included in the provisions of the statute. The statute is but an amendment of the general law, which itself covers all classes of corporations given the right of eminent domain, none are excepted. The procedure for obtaining the land or easements thereon is the same, except that pipe line companies, if they so elect, may give the bond prescribed and if accepted by the owner, or if not, approved by the court, they may enter immediately. There was good reason in the mind of the legislature no doubt for this provision, to meet exigencies and conditions peculiar to that class of public service corporations. Can it be rightfully said that such an amendment of the general law amounts to a segregation of individuals or corporations from a class to which they properly belong, so as to bring it within the constitutional mandate? We think not. An examination of the authorities cited will show we think that they relate to special statutes, applicable to particular persons, less than a class. There is no more reason for saying that the act in question is special legislation, because it provides for an alternative method of procedure for pipe line companies in section 20, than for saying that section 18, before the amendment, was special legislation, because with respect to railroads it provided that they might take an estate or interest therein less than a fee. The general law before the amendment put corporations given the power of eminent domain into several classes. Pipe line companies for carrying oil and gas were put into a class by themselves. The special provisions of the statute as amended, objected to, cover all corporations of this class. *State* v. *Cooley,* relied on, says: "A law is general, in the constitutional sense, which applies to and operates uniformly upon all members of any class of persons; * * * while a special law is one which relates and applies to particular members of a class." Substantially the same definition is given in some of the other authorities cited. In the California case a statute which prohibited baking on Sunday was held unconstitutional, because it picked out the baking business only, making it class legislation, when the law would have been as applicable to all other traders as to it. Our cases of *Groves* v. *County Court* and *Mc-*

*Eldowney* v. *Wyatt,* are equally inapt.   The first says: "Special laws are those made for individual cases, or for less than a class requiring laws appropriate to its peculiar condition and circumstances."   *McEldowney* v. *Wyatt* says: "A statute relating to persons or things as a class is a general law; one relating to particular persons or things of a class is special."   In our opinion the act involved is not special legislation.

Next, is the statute violative of the due process provisions of our constitution and of the federal constitution?   Clearly not. Notwithstanding the provision for giving bond to make entry on the land the applicant is not permitted, without acceptance by the owner, or upon due notice to him and approval by a court having jurisdiction, to put a single foot upon the land sought to be taken; and if, as in this case, any question is made as to the right of the applicant to take, or the public purpose for which he proposes to take the land, is made, these questions will properly be tested by the court before approval of bond or right of entry become complete.   Besides, would not injunction lie under the provisions of section 20, to protect the owner?   Due process does not necessarily mean process of a court.   "All that is essential is that 'in some appropriate way, before some properly constituted tribunal, inquiry shall be made as to the amount of compensation; and when this is provided for there is that due process of law which is required.'"   Brannon on the Fourteenth Amendment, 467.   The authorities cited by counsel for plaintiff in error are equally decisive of this proposition. Our decisions say: "Due process of law means, as used in said section, in the due course of legal proceedings according to those rules and forms, which have been established for the protection of private rights, securing to every person a judicial trial before he can be deprived of life, liberty or property." *Peerce* v. *Kitzmiller,* 19 W. Va. 564; *White* v. *Crump,* 19 W. Va. 583; *Williams* v. *Freeland,* 19 W. Va. 599; *Griffee* v. *Halstead,* 19 W. Va. 602; *Peerce* v. *Adamson,* 20 W. Va. 57; *State* v. *Sponaugle,* 45 W. Va. 415.   That the statute in question by proper proceedings fully protects the rights of the owner not only appears from its provisions, but has complete demonstration in the present proceeding taken under it.   Defendant has been permitted to make every defense and oppose every legal

obstacle in the way which could possibly be afforded him. Why, therefore, should we dwell further on this proposition?

The next constitutional argument is based on section 9, art. 3, of our constitution, against the taking of private property without just compensation *paid, or secured to be paid.* It is contended that the provision of section 20, relating to the giving of bond does not satisfy the requirements of the constitution, "paid, or secured to be paid." Certainly a bond, if good in form, sufficient in amount and with sufficient surety, would satisfy the requirement "secured to be paid." But it is insisted that the land itself should be made the primary security, and title and the right reserved. This would not always furnish the best security for the liberal findings of commissioners and juries in such cases. The bond provided is to serve in case the owner and applicant are unable to agree. If the bond is deficient in form, amount, or surety, ample provision is made in the statute for correcting these defects. It is furthermore insisted that the bond should not be approved or entry made until the damages have been assessed by commissioners or jury. In the early Virginia case of *Tuckahoe Canal Co.* v. *Tuckahoe & James River R. R. Co.*, 11 Leigh, Anno. 552, a general statute, passed at the session of 1836-7, gave similar rights to railroad companies to enter upon land before condemnation and assessment of damages, and providing for injunction against the owner from interference, except in certain cases. This statute was upheld by the Virginia court. This case is cited in *Spencer* v. *Point Pleasant & Ohio R. R. Co.*, 23 W. Va. 406. Speaking of the constitution and with reference to the statute there involved, providing that after the damages should be assessed, the condemning railroad might be enjoined from the use of the right of way until the damages assessed should be fully paid, the court by Judge GREEN says, at page 412: "Indeed, had the Legislature gone still further and permitted a railroad company to take possession of the land it wanted to condemn, when it first instituted its proceedings to condemn the land, before even the appointment of commissioners, without paying anything to the owner on simply giving a bond, with approved security, to pay the just compensation when ascertained, it would in so doing be complying with the words of our Constitution." True he adds: "But it does seem to me that it would

be violating its spirit, if the spirit of this constitutional provision is correctly set forth by Chancellor Kent in the quotation which we have made from him, and I think that the real spirit of it is correctly stated by him." This expression is *obiter*. Chancellor Kent was apparently speaking of constitutional provisions limited to language like the first clause of our section 9, art. 3, providing that "Private property shall not be taken or damaged for public use, without just compensation." But with reference to the taking of such property for the purpose of *internal improvements,* the language of the next provision is "until just compensation shall have been paid, or secured to be paid." The expression "secured to be paid" must be construed according to the plain import of the words, unless a different meaning clearly appears from the context. A pipe line for transporting natural gas for the public use is an "internal improvement" within the meaning of our constitution. *West Va. Transp. Co.* v. *Vol. O. & C. Co., supra,* page 388. That a statute like the one in question here is not objectionable on constitutional grounds is clear from *Tuckahoe Canal Co.* v. *Tuckahoe & James River R. R. Co., supra.* Judge Tucker at page 80 says: "It seemed to be considered by the counsel, that the condemnation must precede the execution of the work. This is, I conceive, a misconception of the law. The company have a right to proceed with their work before condemnation; and, indeed, there is no absolute obligation on them, to institute the process for assessing the damages to the land, since in case of their default the owner himself may do so. It is, therefore, clear that the work is not to be suspended until the damages are assessed and paid; and this is rendered more undeniable by the 13th section, which in connexion with the previous sections provides, that 'in the meantime' (that is, while the process of valuation or assessment is going on) 'no injunction shall be awarded to stay the proceedings of the company in the prosecution of their works, unless &c.' It was not then necessary, that the damages should have been assessed and paid before the company proceeded to the erection of their bridges." In *Old Colony R. Co.* v. *Framingham Water Co.,* (Mass.) 13 L. R. A. 332, it was held that the provision for compensation for land taken by water companies, precisely the same as the public statute relating to railroad companies, except that

the selectmen of the town were thereby made the tribunal to determine the sufficiency of the security instead of the county commissioners, was held to be sufficient, and not violative of the constitution. That provision of the statute was that the water company might, "upon application by either party, require the Company to give security to the selectmen of said town for payment of all damages that may be awarded to them; and if, upon petition of the owner, the security appears to the selectmen to have become insufficient, they shall require the giving of further security." The Supreme Court of Pennsylvania, in *Wallace* v. *Railroad Co.*, 138 Pa. St. 168, construing a statute from which the provisions of our act now under consideration were evidently taken, held, that after a bond had been taken with security approved a bill in equity would not lie against a railroad company to restrain the completion of the railroad, on the ground that both the railroad company and sureties had become insolvent. And speaking of the term security in the constitution of that state, that court says: "The only reasonable, and therefore the true construction of the word 'secured' in the constitution, is that it shall be made reasonably safe or sure that the owner of the property taken shall be able to collect the compensation for it, and the words 'sufficient sureties' in the act, must be construed to mean such sureties as at the time they are taken make it reasonably certain that the owner of the property taken can collect from them a just compensation." According to these authorities there can be no question that the bond provided for in the statute fully answers the requirement of the constitution "secured to be paid."

The next point of error urged, is that the easement or right of way proposed is without width or depth or definite description. The plan attached to the bond shows the outside boundaries of defendant's land, and fixes 'the right of way or easement proposed to be taken through the same by reference to a distinct line of survey, with definite termini and definite and distinct courses and distances, so that there can be no doubt or controversy as to the true location of the line of the proposed right of way or easement. The petition filed by the applicant even more definitely describes this line, and alleges that the only pipe line which petitioner proposes to lay upon said route will be six inches in diameter and will be used exclusively for

the transportation of natural gas.  The application we think conforms strictly to the letter as well as the spirit of the statute.  The plan required by the statute is one "showing the route of the proposed pipe line over said land."  The plan attached to the bond in this case does that.  Can more be required?  We think not.  The petition says the pipes will be buried under the surface of the ground to such a depth as not to interfere with the use of the land for agricultural purposes.  True the application calls for no specific width, but the proposal is for a mere right of way or easement to bury a six inch pipe line upon defendant's land and maintain it there.  When so buried the surface will be subject to use and occupation by the owner, except in so far as such use and occupation may interfere with petitioner's right to install and maintain the pipe line in place.  After installation all that a right of way or easement of this character would call for would be right of entry and of ingress and egress to keep the line in repair.  Unless a definite width should be actually taken to the exclusion of the owner of the fee, which would be unduly burdensome on both applicant and owner, no definite width could be accurately described.  But it is argued that without width and depth it will be impossible to determine the damages.  We think there is no difficulty confronting commissioners or juries on this score.  The character of the entry and of the use and occupation of land for an easement or right of way of this character is so well understood in the country these days that we think a jury would find little difficulty, certainly not more so than in other cases, in reaching a proper estimate of the damages; not only this, but the jury could and would be enlightened by evidence on the question, and thereafter the owner of the right of way or easement would always be confined to a reasonable use, and liable to damages for abuse of his right.  We think the statute clearly contemplates the taking of such a right of way or easement.  Our case of *Crosier* v. *Brown*, 66 W. Va. 273, says in the first point of the syllabus, that "An easement of private way over land must have a particular definite line."  That case related to a private way over another's land.  It had no particular width or depth.  In *Lovett* v. *Gas Co.*, 65 W. Va. 739, the gas company it seems had condemned strips eighteen inches wide through two tracts of land, which of course might be done, but

every one knows that eighteen inches would not be sufficient for ingress and egress in the work of laying and maintaining such a pipe line. The question which we have here, however, was not decided in that case. In *Gas Transportation Co.* v. *Wilson,* 70 W. Va. 157, the proposition was apparently the same as in this case, to take a mere right of way or easement less than a fee over defendant's land. The only question decided there, which can have any application here, was, that in such cases the landowner is entitled to damages not alone for the estate or interest actually taken, but also damages to the residue, the fee in the whole tract, including therein the fee in that part of the tract covered by such right of way. We are of opinion to overrule this point of error.

The next point is that the public use of the proposed right of way or easement is not sufficiently shown to warrant the judgment complained of. This question is raised by the demurrer, by the pleas filed, as well as by some of those rejected. The cases relied upon in support of this proposition are: *Salt Co.* v. *Brown,* 7 W. Va. 198; *B. & O. R. R. Co.* v. *P. W. & Ky. R. R. Co.,* 17 W. Va. 812; *Varner* v. *Martin,* 21 W. Va. 534; *Railroad Co.* v. *Iron Works,* 31 W. Va. 710; *Cemetery Association* v. *Redd,* 33 W. Va. 262; *Fallsburg Co.* v. *Alexander,* 101 Va. 98; *Charleston Gas Co.* v. *Lowe,* 52 W. Va. 662; *Railroad Co.* v. *Coal Co.,* 62 W. Va. 185. In substance it is said of them that they affirm the following propositions: (1) That the use which the public is to have of the property taken must be fixed and definite, and on terms and charges fixed by law; (2) that such public use must be a substantial beneficial one, obviously needful for the public, which it cannot do without, except by suffering great loss or inconvenience; (3) that the necessity for condemnation must be apparent and that the public need must be an imperious one. These propositions are drawn mainly from the language of Judge GREEN in *Varner* v. *Martin, supra.* That case involved the constitutionality of an act of the legislature giving right to take the land of another for a private way. The questions involved were rather legislative than judicial. The propositions were correctly applied in that case. True it is, however, that courts may generally inquire into the question whether the property proposed to be taken is for a public use, even though the condemnor be of a class of

persons or corporations authorized to take land for public use. The court below properly exercised this jurisdiction in this case. It permitted issues to be made up to try this question, and by finding and adjudging that the petitioner had the right to take the property by condemnation, it necessarily decided that the use to which the right of way or easement proposed to be taken was to be devoted was a public use, giving the right to take. We do not propose to enter upon any lengthy discussion or review of the prior decisions of the court.

On the first proposition, that the public use must be fixed and definite, and on terms and charges fixed by law, we observe first, that the legislature by general law has conferred upon pipe line companies, organized for transporting oil and natural gas, the right of eminent domain, and has thereby necessarily imposed upon them, as public service corporations the right and duty of performing a public service. That right and duty is fixed as firmly as if written into the statute. Pipe lines for transporting oil must carry oil, as railroads must carry passengers and freight, at reasonable rates, if such rates are not fixed by statute. Pipe line companies organized for transporting gas must serve the people with gas, under reasonable and proper regulations, along the entire line traversed, and for reasonable rates fixed by themselves, or by statute, or by contracts or ordinances of municipalities. Are not the rights of the public so fixed sufficiently definite to answer the requirements of the law? We think so. The rights of the people are thus protected in nearly every case where the public is served by public service corporations, furnishing water, gas, electricity, or transportation. *Charleston Gas Co.* v. *Lowe, supra,* and Pittsburg *Hydro-Electric Co.* v. *Liston,* 70 W. Va. 83, recent decisions of this court support these conclusions. *Calor Oil & Gas Co.* v. *Franzell,* (Ky.) 109 S. W. 328, as well as *Olmsted* v. *Proprietors of the Morris Aqueduct,* 47 N. J. L. 311, are likewise in point. So also are the cases of *Gibbs* v. *Balt. Gas Co.,* 130 U. S. 396; *Munn* v. *Illinois,* 94 U. S. 133.

On the question of the public necessity for the use of the property, covered by the last two propositions relied on, it may be said generally, that when a public service corporation is organized to serve the public it assumes the duties and responsibilities incident to that service and imposed upon it by law. If

such corporation be a pipe line company to transport or serve the public with gas, it must of necessity have land or rights of way from the source of supply to the places of consumption. It is unnecessary to argue at this day that natural gas for light, heat and power is of great public utility, and if the public is served there is imperious demand for rights of way or easements in that service. Where a public service corporation has a public duty to perform what is necessary in the way of easements and other means of performing this service is largely a matter within its discretion. It is so with railroad companies, and we see no reason why the same rule should not apply to pipe line companies transporting gas. When the legislature clothed this class of companies with the power of eminent domain we must assume that it understood the nature of the public service to be performed, and determined that there was sufficient public necessity therefor. Want of general public necessity was urged in *Hydro-Electric Co.* v. *Liston, supra,* and the question was there met on the authority of Lewis on Eminent Domain, by the proposition, that the question was not a judicial but a legislative one; that whether necessity for taking the land exists in favor of the condemnor is largely a matter for its own determination.

But it is argued that but few persons are or will be served in West Virginia by the proposed pipe line; that most of the gas is and will be transported into Pennsylvania; that the petitioner is a corporation under the laws of Pennsylvania, and that its principal business is to produce gas and transport it into that state, and that the sovereign right of eminent domain is properly limited to the service of the people of the state where the power is invoked. While the petitioner is a foreign corporation it avers and proves its authority to do business in this state. Having obtained authority to do business here, section 30, chapter 54, Code 1906, confers upon it the same rights, powers and privileges, and imposes upon it the same duties and liabilities, and subjects it to the same rules and regulations as domestic corporations. *Floyd* v. *Loan & Investment Co.,* 49 W. Va. 327. Section 24, chapter 52, of the Code, provides that, "Such company shall, for the purpose of transporting natural gas, oils and water, be considered and held to be a common carrier, and subject to all the duties and liabilities of such carriers

under the laws of this state." The petition avers and the evidence shows that petitioner is serving many persons in this state with gas. True, but few at present are being served by the particular line in question, but it avers and proves its willingness to serve all persons applying, subject to its proper rules and regulations. It avers and proves that it has fixed reasonable prices and rates for such service. If the petitioner is serving the people of West Virginia with gas, and all who apply, as it avers and proves, it cannot be denied the right of eminent domain because it serves the people in another state into which its pipe lines go. There is not a particle of evidence in the case showing or tending to show that petitioner has ever neglected its duty toward the people of this state. That but few are shown to be taking gas from the particular line sought to be extended through defendant's land is of little consequence. The petitioner is seeking business. Practically the same objections were interposed to the rights of the petitioner in *Hydro-Electric Co.* v. *Liston,* and were met in the same way that we have met them here.

Lastly, it is urged that it was error to deny the defendant the right of trial by jury, on the question of the public need or benefit of the proposed pipe line. This the authorities hold is a judicial question, and not one of fact to be tried by a jury. *Hydro-Electric Co.* v. *Liston, supra; Sisson* v. *Buena Vista County,* (Iowa) 70 L. R. A. 440.

The foregoing conclusions lead to an affirmance of the judgment, and this will be the mandate of the court.

*Affirmed.*