No. 26,112.

JOHN T. LOVE, *Appellee,* v. EMPIRE NATURAL GAS COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. EMINENT DOMAIN—*Right of Way for Pipe Line—Sufficiency of Description.* In a condemnation of a right of way to lay a pipe line in order to serve the public by the transportation of gas to consumers, it is not necessary that a definite width of right of way for the line be described. It is enough if the course be surveyed and marked out and the termini of the line be fixed.

2. SAME—*Unreasonable Use—Damages.* If an unreasonable use of the land is made in the inspection and maintenance of the pipe line after it is installed, the landowner will be entitled to recover the damages so occasioned.

Appeal from Cowley district court; OLIVER P. FULLER, judge. Opinion filed October 10, 1925. Reversed.

*Robert D. Garver,* of Bartlesville, Okla., for the appellant.

*S. C. Bloss, J. E. Torrance* and *O. W. Torrance,* all of Winfield, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: The Empire Natural Gas Company instituted a proceeding to condemn a right of way for a gas pipe line through the land of John T. Love. Commissioners were appointed to lay out the right of way and to appraise the value of the land taken and to assess the damages resulting from the appropriation. The commissioners so appointed viewed the Love land together with other tracts involved, and in their report, which was duly filed, appraised the value of the land taken and the damages sustained by the owner. The amount was paid into the treasury of the county and no appeal has been taken from the award.

---

1. Eminent Domain, 20 C. J. § 422.  2. Id., 20 C. J. § 525.

Shortly afterwards the company began the construction of the pipe line, whereupon Love instituted an action alleging that the company had wrongfully taken possession of a portion of his land and was keeping him out of possession of the same, and further alleged that an attempted condemnation of the line was void for indefiniteness in the description of the land taken. He asked for judgment in ejectment and for damages resulting from the unlawful occupancy of the land, or in the alternative that the court determine the limits of the appropriation and to decree that the company be confined to those limits and that plaintiff be awarded the value of the land and damages for the permanent use and occupancy of the same.

In the petition filed it was stated that plaintiff's land consisted of 200 acres, but in a subsequent amendment of the petition he claimed that the tract consisted of 360 acres additional, which was adjacent to the former tract, and that altogether constituted his ranch. The defendant answered in substance that the condemnation was valid, that the only easement taken was a right to lay the pipes under the surface traversed and the right of ingress and egress to haul material on the land for the construction of the line, and afterwards for repairing the same, and that therefore plaintiff is not deprived of any part of the surface of the land, and further that it is not possible or practicable to fix definitely the extent of the use of the land in laying the pipe or in making repairs when repairs become necessary. It was further alleged that the award of damages did not and was not intended to cover any damages caused by the defendant in repairing and maintaining its lines subsequent to the completion thereof, but that for all such damages the defendant would be liable to the party suffering them and would pay the damages at the time they were occasioned. A jury was impaneled, and after the introduction of the evidence the court instructed the jury that the condemnation proceedings were void, and, treating the appropriation as a permanent trespass, instructed that the question to be determined was the amount of damages sustained by plaintiff by reason of the construction of the pipe line, and that in measuring the damages they should find the value of the ranch as a whole just prior to the construction and its value just after construction and award plaintiff the difference between the two values so found. The verdict returned by the jury awarded plaintiff $5,000.

The validity of the condemnation proceeding is the principal question in the case. The regularity of the preliminary steps taken towards condemning a right of way for the pipe line is not questioned. The only objection to the condemnation is that the commissioners did not state definitely the width or extent of the land taken. In the order of the judge appointing the commissioners they were directed among other things to lay out and condemn a pipe line, the same to be of sufficient width to permit the laying of a "twelve-inch pipe line, with authority to ascertain the quantity of land necessary for such purpose out of each quarter section or other lot of land through which said proposed route is located, and to appraise the value of such portion of any such quarter section or other lot of land, and assess the damages thereto."

In their report it was stated, after reciting the location and survey which had been made:

"We have ascertained and hereby find that it is necessary that said Empire Natural Gas Company have and take, for the purposes of said pipe line, a right of way as shown by said application and plat thereto attached, and as hereinafter described, sufficient in width for the laying, constructing and maintenance of a twelve-inch gas pipe line, such line to be buried below plow depth in a ditch not exceeding three feet in width, with right to use sufficient land on either side of said line as so surveyed and staked out to accommodate its workmen, teams and machines used in laying the same, such line to be covered and said ditch refilled in workmanlike manner after the laying of said line, and said premises to be left in as nearly the same condition as possible as when entered upon by said company."

They reported that the line through the land was 395.9 rods long, and they appraised the value of the land taken at $197.95, the damages to the land at $197.95, and damages to crop at $20, making a total award of $415.90.

Plaintiff urges that no one can ascertain from the report or other of the proceedings the limits of the easement, that he cannot know how much of his land will be occupied by the company nor to what extent it will be used, and that nothing in the proceedings discloses where his right ends and that of the defendant begins. The legislature has conferred on pipe-line companies organized for the transportation of gas the right of eminent domain. The power and right is given in order that it may serve the public. The transportation and furnishing of gas to the people along the line for heat, light and power is public use, and one subject to reasonable regulation by

the state through its public service commission. The statute does not provide in detail the method of obtaining the easement, but prescribed that—

"Lands may be appropriated for the use of . . . pipe-line companies and for the piping of gas in the same manner as provided in this article for railway corporations, as far as applicable." (R. S. 17-618.)

The steps taken towards an appropriation for the pipe line followed closely those prescribed for appropriating a right of way for a railroad, except as to the width of the right of way. The proceedings pointed out definitely the point of beginning, the point where the line commenced, and the point of ending, and between these termini a line was surveyed and staked out and the right of way was laid on this line.

It is true, as plaintiff contends, that in condemning a right of way for a railroad the proceedings must show the land taken, including the width of the right of way. However, an appropriation for a right of way for a railroad vests in the railroad company the right to the surface of a strip of land with all the trees and soil necessary for the construction, maintenance and operation of its railroad. It may appropriate sufficient of the surface for its main tracks, sidetracks, depots, water tanks and other necessary appliances, and for these purposes its right of occupancy is exclusive. It is therefore essential that the extent of the land taken shall be definitely determined. In an appropriation for a pipe line the surface of the land is not taken. The pipes are buried in the ground at a depth which will not interfere with the use of the land for agricultural purposes, and the surface may thereafter be used by the owner. After the line is constructed the surface will not be used by the company except for inspection and for occasional repairs when they become necessary. The use for pipe-line purposes, therefore, differs materially from that of a railroad right of way, and probably in view of this difference the legislature made an exception and provided that the mode and manner of condemning a right of way for a railroad should be used only so far as they were applicable. They are not applicable in respect to fixing the width of a right of way for a pipe line, and in the nature of things the description of the easement for it was as definite as it could well be made. In such an appropriation no more land can be taken or used than is necessary for the use of the utility, and if a strip of

the surface had been taken, the owner would have had a good ground for insisting that it was not necessary for the purposes of the company. In a condemnation of land for an aqueduct the owner contended that the proceedings were void because the width of the land used in conducting the water through pipes from a reservoir to the village was not defined. He insisted that as the statute provided the proceedings should be the same as are had in the case of laying out a highway, and as the width of the highway was required to be fixed, it was essential that the line of the aqueduct should also be fixed. In answer to this contention the court remarked:

"Among the general provisions relating to highways is one which requires that the description include a statement of the width. But we think the provision regulating proceedings in the county court was not intended to embrace this requirement. The difference in the use to which the land is subjected in the two cases clearly justifies this belief. In the case of a highway the rights of the public are such as almost entirely to deprive the owner of the use of his land. In the case of a pipe line the occupancy of the owner is subject only to slight and occasional interruptions. In one case a roadbed is constructed and maintained upon the surface. In the other a pipe is buried in the soil, and the benefit is obtained without any use of the surface, except in the making of repairs. Nor do we think the rule of definiteness is one that can be satisfied only by the taking of a specified width. The method here adopted for determining the extent of the right is the same that has long been taken by landowners in the voluntary conveyance of like privileges. The experience of men in the use of covered pipes for the conveyance of water is such as to enable tribunals to fix with reasonable certainty the damage to which an owner is subjected by a right to lay and maintain." (*Childs v. Village of Newport,* 70 Vt. 62.)

In *Carnegie Nat. Gas Company v. Swiger,* 72 W. Va. 557, a condemnation was made for a pipe line to transport natural gas, and it was contended that the proceedings were invalid because a definite width of the line was not fixed. There had been a line of survey with definite termini and definite and distinct courses and distances, leaving no doubt as to the true location of the proposed right of way. In determining the question the court said:

"The plan required by the statute is one 'showing the route of the proposed pipe line over said land.' The plan attached to the bond in this case does that. Can more be required? We think not. The petition says the pipes will be buried under the surface of the ground to such a depth as not to interfere with the use of the land for agricultural purposes. True, the application calls for no specific width, but the proposal is for a mere right of way or easement to bury a six-inch pipe line upon defendant's land and maintain it there. When

Love v. Empire Natural Gas Co.

so buried, the surface will be subject to use and occupation by the owner, except in so far as such use and occupation may interfere with petitioner's right to install and maintain the pipe line in place. After installation, all that a right of way or easement of this character would call for would be right of entry and of ingress and egress to keep the line in repair. Unless a definite width should be actually taken to the exclusion of the owner of the fee, which would be unduly burdensome on both applicant and owner, no definite width could be accurately described." (p. 569.)

In a Pennsylvania case in relation to the condemnation of a right of way for a pipe line it was said:

"The easement acquired by the company is for the laying of the gas pipe beneath the surface of cleared land, or, as expressed by the act itself, for 'burying' the pipe at least twenty-four inches below the surface in all such lands. The company does not require, nor is it to the interest of the landowner, that it should appropriate a definite strip of surface of twelve feet in width, as suggested by the learned judge of the court below, or of any other width, to which it shall have an exclusive right of possession as against the landowner. What is needed is the space under the surface in which the pipe may rest, together with the right to deposit or 'bury' it out of the landowner's way, and the right of access to it for purposes of maintenance and repairs. Subject to the easement so defined, the landowner continues in the possession and use of the entire surface as freely as before the 'burial' of the pipe took place; and if the burial of the pipe is properly done, and the joints are made secure, the presence of the pipe line under the soil will in no way interfere with its cultivation or use." (*Clements v. Philadelphia Co.,* 184 Pa. St. 28, 31.)

A similar holding was made by the supreme court of North Dakota in *N. P. Ry. Co. v. Boynton et al.,* 17 N. D. 203.

Plaintiff urges that in inspecting the line and in making repairs his cattle will be frightened and land injured in hauling material for repairs over it. If the action of the company in entering his land for inspection and maintenance should damage fences, unreasonably cut the ground or injure cattle or crops, it would be liable to plaintiff for such injuries, and the one who suffers the injury can recover for the damages so occasioned.

We conclude that the trial court was in error in holding that the condemnation proceedings were void and in permitting a recovery for permanent damages. The judgment is therefore reversed and the cause remanded with directions to enter judgment for defendant.